■ LISA M. EHRENREICH, Appellant, v DARRIN M. LYNK, Respondent. (And Another Related Proceeding.) [903 NYS2d 549]—

Garry, J. Appeal from an order of the Family Court of Otsego County (Burns, J.), entered January 14, 2009, which, among

District Board of Education filled his former position of Director of Curriculum and Development.

other things, granted respondent's application, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a daughter, born in 2004. In the spring of 2006, the parties reached a stipulation by which they shared joint custody of the child, with primary physical custody to the mother. On their own they then developed a shared parenting plan by which the child spent three nights and five days, including three weekdays, at the father's home in the Village of Cooperstown, Otsego County, and four nights and two days each week with the mother. In 2007, Family Court dismissed cross petitions by the mother and father for sole custody and continued the prior custody arrangement and shared parenting schedule. In March 2008, the mother petitioned for modification to permit the child to attend preschool in the Village of Fort Plain, Montgomery County, where she then resided; the petition was dismissed. In August 2008, having relocated to the Town of Little Falls, Herkimer County, the mother petitioned to modify the parenting schedule to permit the child to attend a preschool there. By the time of the fact-finding hearing, however, she had returned to Fort Plain and wished her daughter to attend preschool in that community. The father had meanwhile enrolled the child in a preschool in the Town of Milford, Otsego County, which she attended on the three weekdays she spent with him, and he cross-petitioned for sole custody. In December 2008, following a fact-finding hearing, Family Court awarded sole legal custody to the father, with visitation for the mother on alternate weekends and during holidays and school vacations. The court deferred the schedule change until September 1, 2009, when the child was to begin kindergarten, continuing the original shared parenting schedule in the interim. The mother now appeals.

A change of circumstances warranting the modification of a joint custody arrangement may be found when "the relationship between joint custodial parents has deteriorated to the point where they simply cannot work together in a cooperative fashion for the good of their children" (*Matter of Blanchard v Blanchard*, 304 AD2d 1048, 1049 [2003] [internal quotation marks, citations and brackets omitted]). The record does not support a finding of such a change of circumstances here. While the parents did require Family Court's assistance to resolve their long-standing difference on a single issue—the choice of

the child's preschool*—there was no evidence that they disagreed or failed to cooperate about any other aspect of her welfare, such as medical care, discipline, or her relationships with their significant others. Beyond this one issue, they appear to have progressed in their communication since the prior court appearance. For example, the father sought the mother's consent before enrolling the child in such activities as a dance class and a youth soccer team; in both instances, the mother consented, and attended the child's soccer games with her new husband. In spite of the mother's desire to send the child to preschool in her own community, she was supportive of the child's experience in the preschool chosen by the father. She testified that the child was doing well there, the father had put the mother's name on the preschool's mailing list at her request, and the new wife kept her informed of preschool events. Both parties testified that the mother, the father, and his new wife had attended preschool conferences together and gone out to dinner afterward as what the father described as "a big family." These are not the interactions of parents whose relationship is "so acrimonious that they are incapable of putting aside their differences" (*Matter of Lynch v Tambascio*, 1 AD3d 816, 817 [2003] [internal quotation marks and citations omitted]).

Notably, the parties have made significant progress in overcoming a previous problem arising from the antagonism of the father's wife toward the mother. At the time of the 2007 proceedings, she had been arrested several times for harassing the mother and had violated a protective order in the mother's favor; Family Court admonished the father at that time for failing to take measures to diminish this hostility. During the current proceedings, however, the father and new wife testified about their increased understanding of the negative effect of this behavior on the child. As a result, although the record indicates some continuing misunderstandings, the parties agree that the relationship has improved; the new wife and the mother communicate regularly in person, by telephone, and through text messages. All parties appear to have demonstrated the ability to set aside their previous differences for the good of the child and to behave in a " 'mature civilized fashion' " (*Matter of Scialdo v Kernan*, 14 AD3d 813, 815 [2005], quoting *Braiman v Braiman*, 44 NY2d 584, 590 [1978]). As both the mother and father are loving, fit parents who wish to share in the child's upbringing, are able to agree on many aspects of her life, and

---

* In addition to the mother's March 2008 preschool-related petition, one of the issues addressed in the 2007 proceeding was the father's enrollment of the child in a preschool program over the mother's objection.

demonstrate more than "a modicum of communication and cooperation" (*Matter of Blanchard v Blanchard*, 304 AD2d at 1049), joint custody shall be reinstated (*see Matter of Lynch v Tambascio*, 1 AD3d at 817; *Matter of Darrow v Burlingame*, 298 AD2d 651, 651-652 [2002]).

Nevertheless, as the mother and father reside in separate school districts, the child's entry into kindergarten necessitated modification of the physical custody arrangement (*see Matter of Williams v Boger*, 33 AD3d 1091, 1092 [2006]). The child was accustomed to spending the majority of her "school day" time at the father's home, she had attended preschool programs in his community and developed friendships there, and she has a younger half-sibling in the father's home; thus, the record provides the requisite "sound and substantial basis" (*Matter of Card v Rupert*, 70 AD3d 1264, 1265 [2010]) to support the award of physical custody to the father. Moreover, Family Court appropriately permitted the shared schedule to continue as long as possible by deferring the change until the beginning of the school year. However, the reduction in the mother's parenting time with the child from roughly half of each week to little more than two days out of every 14 was unnecessarily drastic, and inconsistent with the stated goal of avoiding unnecessary disruption in the child's life. Though not dispositive, this reduction was also inconsistent with the position of the attorney for the child at trial, who asked the court to preserve the child's loving relationships with both parents by devising as nearly equal a schedule as possible. Thus, we find an increase in the mother's parenting time to be in the child's best interest (*see Matter of Valentine v Valentine*, 3 AD3d 646, 647 [2004]). The record is sufficiently complete to permit this Court to avoid delay by making the determination, so remittal is unnecessary (*see id.*; *Matter of Blanchard v Blanchard*, 304 AD2d at 1050). Accordingly, the mother's current parenting time with the child every Wednesday after school shall continue, her parenting time on weekends during the school year will be increased to two weekends out of every three, and the child will spend the majority of her summer vacation with the mother, and three nonconsecutive weeks during the summer with the father; the father shall also have time with the child on two weekdays and nights during alternating weeks or on alternating weekends during the period she is with her mother, to be scheduled as the parties may agree. Family Court's other determinations with respect to the parenting schedule shall remain undisturbed.

Cardona, P.J., Mercure, Peters and Kavanagh, JJ., concur. Ordered that the order is modified, on the law and the facts,

without costs, by reversing so much thereof as awarded sole legal custody of the child to respondent; the parties are awarded joint legal custody and their custodial time with the child is adjusted as set forth in this Court's decision; and, as so modified, affirmed.

