■ In the Matter of TRACEY L., Respondent, v COREY M., Appellant. [55 NYS3d 828]—

Lynch, J. Appeal from an order of the Family Court of Tompkins County (Cassidy, J.), entered August 19, 2015, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the unmarried parents of a child (born in 2013). In March 2014, the mother petitioned for custody of the child and the matter was resolved by a stipulated order entered in August 2014. The order provided for joint custody of the child, with the father to have parenting time, as could be agreed, at least three days each week including one overnight. Further, the father was ordered to participate in counseling "until such time as it is no longer recommended, so long as his financial circumstances and insurance allow, and he shall make all reasonable efforts to obtain and maintain insurance." In November 2014, the mother filed a petition to modify the August 2014 order, seeking sole custody of the child. After a

---

hearing held in June 2015, Family Court awarded the mother sole legal custody and physical placement of the child, with parenting time to the father every other weekend and one weeknight every alternate week. The father now appeals.

"A parent seeking to modify an existing custody order first must demonstrate that a change in circumstances has occurred since the entry thereof that is sufficient to warrant the court undertaking a best interests analysis in the first instance; assuming this threshold requirement is met, the parent then must show that modification of the underlying order is necessary to ensure the child's continued best interests" (*Matter of Crystal F. v Ian G.*, 145 AD3d 1379, 1380 [2016] [internal quotation marks and citation omitted]). The prior stipulated order is a relevant factor to consider when assessing whether a child's best interests are served by modification, although it is entitled to less weight than an order entered following a plenary hearing (*see Matter of Hrostowski v Micha*, 132 AD3d 1103, 1105 [2015]; *Matter of Crippen v Keator*, 9 AD3d 535, 536 [2004]).

The father argues that the mother failed to demonstrate a change in circumstances that would warrant modification of the prior order. We disagree. The mother testified that the prior stipulation was made after, among other things, the father left the house with a loaded gun during an argument, leaving the mother to believe that her sister's life was in danger. The father acknowledged that he left the house with a loaded gun, explaining that he did so to "test" the mother to see what she would do. As a consequence of this incident, he was required to remove all the guns from his home. Subsequent to the stipulated order, the parties attempted to reconcile without success. In September 2014, the father locked the mother out of the house where she and the child had been staying and told her to sleep on the porch with his dog. The mother was eventually picked up by a family member and she filed a police report concerning the incident. She testified that she was fearful of the father and that they were unable to communicate civilly.

The mother also submitted copies of text messages purportedly sent by the father wherein he called her disparaging names. The father testified that, while he may have sent these texts, he believed they were taken out of context and provoked by the mother, who he believed could be equally uncivil. The father explained that he did not complete counseling ordered by Family Court in August 2014 because his insurance did not provide coverage and he could not afford to attend. He testified that he had a job, but did not plan to return to counseling

since he had completed an online anger management course. When asked how disputes with the mother regarding the child could be resolved, the father testified that they could have a written parenting agreement in which they could "hash out" which parent could have the "final say." In our view, the evidence of the father's hostile treatment of the mother, the parties' worsening ability to communicate and cooperate with regard to the child (*see Matter of Smith v McMiller*, 149 AD3d 1186, 1187 [2017]; *Matter of Youngs v Olsen*, 106 AD3d 1161, 1163 [2013]), and the father's apparent resistance to complying with the prior order presented a change in circumstances to warrant consideration of whether a modification of the prior order was in the child's best interests (*Matter of Chris X. v Jeanette Y.*, 124 AD3d 1013, 1014 [2015]). Given the pattern of inappropriate and hostile conduct by the father towards the mother, Family Court appropriately considered the gun incident preceding the stipulated order (*see Matter of Nephew v Nephew*, 45 AD3d 1194, 1195 [2007]; *Matter of Holden v Tillotson*, 277 AD2d 735, 735 [2000]).

When determining whether a modification is in a child's best interests, we consider such factors as "maintaining stability for the child[ ], the respective home environments, length of the current custody arrangement, each parent's relative fitness and past parenting performance, and [each parent's] willingness to foster a healthy relationship with the other parent. Domestic violence also is a necessary factor to consider in determining custody matters" (*Matter of Chris X. v Jeanette Y.*, 124 AD3d at 1014 [internal quotation marks and citation omitted]). The prior incident involving the loaded gun, the father's disconcerting explanation of the event, his locking the mother out of the house at night and apparent lack of interest in counseling raise a serious concern with regard to his fitness as a parent. In contrast, it is not disputed that the mother has been the child's primary caretaker and attended a 12-week parenting course that she testified provided her with "a lot of parenting insight." Considering the parties' inability to communicate effectively, and giving the requisite deference to Family Court's ability to observe each party's demeanor, we find that the record presents a sound and substantial basis for its finding that an award of sole legal custody to the mother serves the child's best interests (*see Matter of Berezny v Raby*, 145 AD3d 1356, 1358 [2016]; *compare Matter of Ryan v Lewis*, 135 AD3d 1135, 1136-1137 [2016]).

The father also challenges Family Court's determination to permit the introduction of the text messages as evidence at the

hearing. Because the father's counsel reviewed the text messages and failed to object to their admission, this challenge is not preserved for our review (*see Matter of Constance NN.*, 47 AD3d 986, 986 [2008]). We also reject the father's claim that he received ineffective assistance of counsel. In order to successfully maintain such a claim, a party must "demonstrate that [he or] she was deprived of meaningful representation as a result of [his or] her lawyer's deficiencies" (*Matter of Hurlburt v Behr*, 70 AD3d 1266, 1267 [2010], *lv dismissed* 15 NY3d 943 [2010]). Our review of the record reveals that the father did receive meaningful representation inasmuch as his counsel made a number of appropriate objections, conducted a thorough direct examination of the father and vigorously cross-examined the mother (*see Matter of Berezny v Raby*, 145 AD3d at 1358).

Garry, J.P., Egan Jr., Clark and Aarons, JJ., concur. Ordered that the order is affirmed, without costs.