■ In the Matter of CHERYL YY., Respondent, v CYNTHIA YY., Appellant, et al., Respondent. (Proceeding No. 1.) In the Matter of CYNTHIA YY., Appellant, v CHERYL YY., Respondent, et al., Respondent. (Proceeding No. 2.) [57 NYS3d 757]—

Mulvey, J. Appeal from an order of the Family Court of Tioga County (Keene, J.), entered August 14, 2015, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, to modify a prior order of custody.

Cynthia YY. (hereinafter the mother) and respondent Dale B. (hereinafter the father) are the unwed parents of two daughters (born in 2000 and 2002). The mother and the father separated after living together for approximately three years. In 2007, the mother and Cheryl YY. (hereinafter the stepmother) began a relationship and were subsequently married. In 2012, joint custody of the daughters was granted to the mother and the stepmother. The mother and the stepmother's relationship ended with the stepmother moving out of the marital home. In March 2014, the stepmother commenced proceeding No. 1 to modify the 2012 custody order to grant her temporary custody of the daughters pending a hearing. In response, the mother commenced proceeding No. 2 to modify the custody order to grant her sole legal custody. Family Court continued joint custody and temporarily granted the stepmother primary physical custody of the daughters with parenting time to the mother. Following a hearing conducted over several days and *Lincoln* hearings with each daughter, Family Court granted the stepmother sole legal and physical custody of the daughters and granted the mother parenting time. The mother appeals.

" 'It is well settled that a parent has a claim of custody of his or her child that is superior to that of all others, absent surrender, abandonment, persistent neglect, unfitness, disruption of custody over a prolonged period of time or the existence of other extraordinary circumstances' " (*Matter of Peters v Dugan*, 141 AD3d 751, 752 [2016], quoting *Matter of Sweeney v Sweeney*, 127 AD3d 1259, 1260 [2015]; *see Matter of Bennett v Jeffreys*, 40 NY2d 543, 546 [1976]). " 'A finding of extraordinary circumstances is rare, and the circumstances must be such that they drastically affect the welfare of the child' " (*Matter of Thompson v Bray*, 148 AD3d 1364, 1365 [2017], quoting *Matter of Ramos v Ramos*, 75 AD3d 1008, 1010 [2010]). "The burden of proof to make a threshold showing of extraordinary circumstances rests upon the nonparent, and only when that burden has been satisfied may the court turn to a custody analysis premised upon consideration of the child's best interests" (*Matter of Jennifer BB. v Megan CC.*, 150 AD3d 1340, 1341 [2017] [citations omitted]; *see Matter of Donna SS. v Amy TT.*, 149 AD3d 1211, 1212-1213 [2017]).

Family Court heard testimony from over 20 witnesses, including the stepmother and the mother. The testimony painted a relatively unflattering picture of the mother as temperamental and quick to anger, and whose preferred method of communication was by confrontation, intimidation, screaming and yelling. Family Court found credible testimony

that the mother meted out verbal and emotional abuse with little or no regard as to the consequences of her behavior on the daughters. In January 2014, Heather Stanton, a Child Protective Services investigator, indicated the mother for injuries to the younger daughter and also indicated both the mother and the stepmother for improperly involving the daughters in their disputes. A preventive case was opened with goals for both the mother and the stepmother. Stanton testified that, in her investigation, she determined that the daughters were fearful of getting hit and screamed at by the mother and that the stepmother often protected the daughters during the mother's outbursts. Stanton attempted to counsel the mother about her behavior toward the daughters, but the mother was unwilling to change and expressed no remorse for her actions. Stanton testified that the mother stated, "If [the daughters] don't change then, nothing will change" and that the mother also stated to Stanton, "Since I can't punish them how I want to punish them, because of you, I will use mental." In another meeting with the stepmother, Stanton recommended that, if the stepmother was going to leave the mother, she take the daughters with her.

Erin Shattuck, a caseworker, testified that the preventive case was terminated positively as far as the stepmother was concerned, as the goal of not involving the daughters in adult discussions was achieved. She also testified that the case was closed negatively and unresolved as to the mother, since the mother had failed to address agreed-upon goals and the mother denied the existence of any issues with respect to the daughters. Shattuck testified that it appeared that the daughters were "upbeat and happy" when they were with the stepmother. Jeremy Phytila, a Child Protective Services investigator, testified about his investigation into a February 2014 domestic violence incident. During his investigation, the stepmother reported that the mother had given the daughters an ultimatum to choose which parent they were going to live with. He testified that after meeting with the daughters, both of them admitted to "being sort of scared of mom, but less scared, because [the stepmother] was there." Phytila found the stepmother to be the more active parent, and he was concerned about the mother's mental, psychological and emotional abuse of the daughters. He indicated the mother for her involvement of the daughters in adult conversations and their fear of the mother.

Family Court also found credible the testimony of the daughters' therapists. The younger daughter's therapist testi-

fied how she counseled the daughter on techniques to help the daughter cope with the mother's outbursts, yelling and arguments during parenting time. The older daughter's therapist testified that this daughter did not feel comfortable visiting the mother because of frequent arguments and that, although the daughter had engaged in self-harm when living with the mother, such behavior had ceased since living with the stepmother. Her testimony also revealed that the daughter's overall mental health had improved since she was not living with her mother. The therapist testified that overnight parenting time with the mother would not be beneficial for the daughter's well-being.

Both parties also offered testimony by family members and friends, with credible testimony by Kayla C., the mother's daughter from a prior relationship. Her testimony confirmed that the mother was an emotional, abusive and distant person who was quick tempered. She testified to frequent screaming by the mother and to a statement made by the mother to the daughters that she wished they were never born. She also testified that the daughters were much happier now that they were living with the stepmother. Raymond YY., the stepmother's father, testified about an incident when the mother had arrived at his home to take the younger daughter for parenting time. The daughter became very upset, was crying and did not want to leave with the mother for overnight parenting time. Kimberly YY., the stepmother's sister, testified about an incident during a phone conservation in which the mother yelled that the daughters were traitors, which caused them to become very upset and to cry. The mother presented several witnesses whose testimony generally related to the period prior to the mother and the stepmother's marriage and who testified that they had never observed any problems between the mother and the daughters.

Family Court found the stepmother's testimony to be credible. She testified that the mother screamed and yelled at her or the daughters almost every day. She testified to an incident when the mother threw a phone at the father and the domestic violence incidents in January and February 2014. The father, who was called as a witness for the stepmother, testified that the mother would frequently berate him in front of the daughters and that she had thrown things at him in the kitchen, resulting in damage to the walls and to the refrigerator door. Family Court did not find the mother's testimony to be credible when she claimed that the stepmother had undermined her authority, caused the daughters to disrespect

her and that the daughters were liars. Instead, the mother's testimony confirmed many of the incidents testified to by other witnesses. The court also found the mother's demeanor to be confrontational and argumentative and did not accept her contentions that the social services caseworkers lied about statements attributed to her or that they lied in their testimony. Based on the overwhelming testimony regarding multiple incidents of the mother's verbal and physical abuse of the daughters and others, we agree with Family Court that the stepmother met her burden of establishing extraordinary circumstances.

We now turn to our best interests analysis. In this analysis, the relevant factors to consider include "maintaining stability in the child[ren's] [lives], the quality of the respective home environments, the length of time the present custody arrangement has been in place and each party's past performance, relative fitness and ability to provide for and guide the child[ren's] intellectual and emotional development" (*Matter of Peters v Dugan*, 141 AD3d at 753-754; *accord Matter of Curless v McLarney*, 125 AD3d 1193, 1197 [2015]). Initially, we find that continued joint legal custody is no longer workable due to the incidents of domestic violence, which resulted in the two indicated reports involving the mother (*see Matter of Troy SS. v Judy UU.*, 69 AD3d 1128, 1131 [2010], *lv dismissed and denied* 14 NY3d 912 [2010]; *Matter of Green v Myers*, 14 AD3d 805, 807 [2005]). Family Court found, and we agree, that the record shows extremely poor parental judgment by the mother. We are particularly disturbed by the mother's attitude that she is the victim of poor treatment by others and that everyone else in this matter is offering false testimony. Her failure to accept constructive parenting assistance offered by the social services providers and her confrontational and argumentative demeanor make her a poor candidate to provide for the daughters' "emotional and intellectual development" (*Eschbach v Eschbach*, 56 NY2d 167, 172 [1982]).

Although there was testimony that, at various times, both the mother and the stepmother had experienced some mental health issues, the stepmother was the only one willing to admit to that and to seek treatment. The stepmother testified that she was employed as a veterinary assistant and described after-school arrangements that she had made for the daughters. She explained her methods of discipline and that she was the one who transported the daughters to therapy appointments and to their parenting time with the mother. Testimony revealed her genuine commitment to the well-being of the daughters, includ-

ing that, when she left the mother, she took the daughters with her out of fear for their safety. "Although not determinative, the expressed wishes of the children are some indication of what is in their best interests, considering their age, maturity and potential to be influenced" (*Matter of Stephen G. v Lara H.*, 139 AD3d 1131, 1132 [2016] [internal quotation marks, brackets and citation omitted], *lv denied* 27 NY3d 1187 [2016]; *see Eschbach v Eschbach*, 56 NY2d at 173). In this regard, we note that the mother acknowledged that the daughters stated that they did not want to live with her. Lastly, we note that the stepmother has not only demonstrated a willingness to foster a relationship with the mother, but she has also reached out to the father and, unlike the mother, has nurtured the daughters' relationship with him (*see Matter of Charles I. v Khadejah I.*, 149 AD3d 1422, 1423 [2017]; *Matter of Stephen G. v Lara H.*, 139 AD3d at 1132).

We agree with Family Court that forcing the daughters to live with an abusive mother, with whom they no longer have a significant emotional bond, would have a devastating effect on them and "drastically affect [their] welfare" (*Matter of Thompson v Bray*, 148 AD3d at 1365). Since the time that the daughters have escaped the emotional roller coaster of the mother's home and her frequent screaming and yelling and seemingly uncontrolled rage, they have thrived under the supportive care and guidance of the stepmother. According Family Court the appropriate deference with respect to its credibility determinations, we find a sound and substantial basis in the record to support its award of sole legal and physical custody to the stepmother and parenting time to the mother (*see Matter of Tennant v Philpot*, 77 AD3d 1086, 1088 [2010]).

Garry, J.P., Egan Jr., Lynch and Aarons, JJ., concur. Ordered that the order is affirmed, without costs.