Matter of Thompson v Wood (2017 NY Slip Op 09219)





Matter of Thompson v Wood


2017 NY Slip Op 09219


Decided on December 28, 2017


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 28, 2017

524788

[*1]In the Matter of ADAM THOMPSON, Respondent,
v
NICOLE WOOD, Appellant. ATTORNEY FOR THE CHILD, Appellant. (And Five Other Related Proceedings.)

Calendar Date: November 21, 2017

Before: Peters, P.J., Garry, Clark, Aarons and Pritzker, JJ.


McNamee, Lochner, Titus & Williams, PC, Albany (Bruce J. Wagner of counsel), for Nicole Wood, appellant.
Tamara M. Cappellano, Johnsonville, for respondent.


Garry, J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Rensselaer County (Cholakis, J.), entered June 9, 2016, which, among other things, partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the divorced parents of a child (born in 2002). In 2011, the parties entered into a stipulation that was later incorporated into a court order, by which they
shared legal custody, and the mother had primary physical custody of the child, with parenting time to the father. In November 2015, the father petitioned for sole custody alleging, among other things, that the mother had denied him visitation and had allowed the child to maintain contact with a certain boy, over his objection. In turn, the mother cross-petitioned to temporarily restrict the father's parenting time, as the child was refusing to visit with the father. During an initial appearance on the matter, Family Court directed that the child lose cell phone and Internet access and that the boy be "off limits." The father thereafter filed four additional petitions alleging that the mother had violated the 2011 order by depriving him of visitation and failing to comply with an agreement to allow no contact with the boy. Following fact-finding and Lincoln hearings, Family Court dismissed the mother's petition and granted the father's petitions in part, [*2]finding the mother in willful violation of the 2011 order and awarding the father sole legal custody and the parents equal shared physical custody — thereby increasing the father's parenting time by two nights in a two-week period. The mother appeals.[FN1]
"A parent seeking to modify an existing custody order first must demonstrate that a change in circumstances has occurred since the entry thereof . . . to warrant the court undertaking a best interest analysis in the first instance; assuming this threshold requirement is met, the parent then must show that modification of the underlying order is necessary to ensure the child's continued best interests" (Matter of Woodrow v Arnold, 149 AD3d 1354, 1356 [2017] [internal quotation marks and citations omitted]; see Matter of Tracey L. v Corey M., 151 AD3d 1209, 1210 [2017]). Here, several relevant facts are undisputed. In October and November 2015, the father discovered text messages of a sexual nature exchanged between the child and her 15-year-old church youth leader, and nude photographs that the child had taken of herself at the mother's home [FN2]. The father informed the mother of these circumstances and expressly indicated his wish that the child lose access to her cell phone, have no contact with the boy, and cease attending the church where the boy served as a youth leader. The mother thereafter acquiesced to the child's requests to not visit with the father for roughly two months, asserting that the child was "old enough" to decide [FN3]. Subsequently, the mother also, without consulting with the father, returned the cell phone to the child and permitted her to attend the church youth group and to have further contact with the boy. Under these circumstances, Family Court properly proceeded with a best interests analysis (see Matter of Joseph WW. v Michelle WW., 118 AD3d 1054, 1055 [2014]; Matter of Smith v Miller, 4 AD3d 697, 698 [2004]; Matter of Betancourt v Boughton, 204 AD2d 804, 806-807 [1994]).
Contrary to the mother's contentions, Family Court's determination of the child's best interests properly weighed the relevant factors, including the child's wishes and stability and each parent's respective home environments, past performance, willingness to foster the child's relationship with the other parent and ability to provide for the child's emotional development (see Matter of Cheryl YY. v Cynthia YY., 152 AD3d 829, 833 [2017]; Matter of Kilmartin v Kilmartin, 44 AD3d 1099, 1102 [2007]). A court's factual findings in this regard "are entitled to deference and its determination should not be disturbed as long as it is supported by a sound and substantial basis in the record" (Matter of Erick X. v Keri Y., 138 AD3d 1202, 1204-1205 [2016]).
Here, acknowledging that the mother had been the primary caretaker, Family Court found both the mother and the father to be loving and fit parents. Although the child shared more interests with the mother than the father, the court found it significant that the child had a close relationship with the father's wife, whereas the stepfather was rarely mentioned. In weighing the remaining factors in favor of the father, the court noted the mother's failure to bring the child to visitation for roughly two months and her actions in showing the child documents related to these custody proceedings. Significantly, the mother's response to the sexual [*3]relationship between the child and the boy was found to be troubling; the mother acknowledged this to be her "worst parenting mistake." In this regard, Family Court found that the mother had "persisted in downplaying" the seriousness of the issue relative to the continuing contact with the boy. The court considered the child's desire to spend more time with the mother, which is not controlling (see Matter of Yetter v Jones, 272 AD2d 654, 656 [2000]), but also noted that it was not unusual for a child to prefer the less-restrictive parent.
The evidence reveals the parties' inability to communicate effectively regarding the child. Notwithstanding their numerous discussions, occurring both in court and out of court, the mother continued to undermine the father and to act contrary to his express wishes. The mother testified that she "knew [the father] was not in agreement" with allowing the child's continued contact with the boy and that she did not make a "joint decision[]." Nonetheless, she unilaterally decided to permit the child to have physical contact with the boy, and to attend the church where he served as her youth leader and his baseball game. She further acknowledged that a message that she had sent to the father "threaten[ed] to file court papers if he didn't allow [the child] to do what she wanted on his time." In sum, although the parties are able to communicate, there is scant evidence that the mother is willing to accept or act upon that communication; instead, after speaking with the father, she disregards his requests and opinion regarding essential parenting issues, and fails to acknowledge that it is important to do so.
Upon this record, a sound and substantial basis supports the determination awarding the parents equal shared physical custody and the father sole legal custody, while directing him to "solicit and reasonably consider" the mother's input regarding any major decisions (see Matter of Emmanuel SS. v Thera SS., 152 AD3d 900, 903 [2017], lv denied 30 NY3d 905 [2017]; Matter of Berezny v Raby, 145 AD3d 1356, 1358 [2016]; Matter of Scialdo v Kernan, 14 AD3d 813, 814-815 [2005]). Similarly, the record supports Family Court's finding that the mother willfully violated the 2011 order by her admitted failure to bring the child to visitation and by her discussion of court proceedings with the child, as well as the court's bench order by permitting the child to have further contact with the boy and returning her cell phone (see Matter of Keefe v Adam, 85 AD3d 1225, 1227 [2011]; Matter of Cobane v Cobane, 57 AD3d 1320, 1322-1323 [2008], lv denied 12 NY3d 706 [2009]; Matter of Aurelia v Aurelia, 56 AD3d 963, 964-965 [2008]).
Finally, we find no merit in the mother's contentions that Family Court erred in denying her trial counsel's requests for adjournments due to a dental appointment and to call the child's therapist as a witness. Whether to grant or deny an adjournment rests within the trial court's sound discretion, and such "requests should be granted only upon a showing of good cause" (Matter of Dench-Layton v Dench-Layton, 151 AD3d 1199, 1200 [2017] [internal quotation marks and citation omitted]; see Matter of Steven B., 6 NY3d 888, 889 [2006]; Matter of Jason N., 178 AD2d 793, 795 [1991]). It does not appear, upon reviewing the record, that the mother's counsel was limited or restricted in any manner from acting upon the mother's behalf in the course of the hearing. Further, the request for a continuance to call the child's therapist as a witness was made near the close of the hearing, without prior notice, and no specific reason for the testimony was set forth.
Peters, P.J., and Aarons, J., concur.




Clark, J. (concurring in part and dissenting in part).


We agree with the majority that there was a change in circumstances that warranted an [*4]inquiry into the best interests of the child. We further agree that the record supports the award of shared physical custody to petitioner (hereinafter the father) and respondent (hereinafter the mother). We disagree, however, with the majority's conclusion that the record supports Family Court's determinations that the mother should be divested of her status as joint legal custodian of the child and that she violated the 2011 order. Accordingly, we concur in part and respectfully dissent in part.
As the majority recognizes, the mother and the father were not on the same page regarding the issue of the child's relationship with the 15-year-old boy and the extent and manner in which she should be disciplined for her alleged transgressions. Nevertheless, this is not a situation where the parties' joint decision making has so broken down that joint legal custody is no longer feasible (see Matter of Finkle v Scholl, 140 AD3d 1290, 1292 [2016]; Matter of Lynch v Tambascio, 1 AD3d 816, 817 [2003]; Matter of Blanchard v Blanchard, 304 AD2d 1048, 1049 [2003]; compare Matter of Cheryl YY. v Cynthia YY., 152 AD3d 829, 833 [2017]; Matter of Spiewak v Ackerman, 88 AD3d 1191, 1192 [2011]). Indeed, the record established that, despite their significantly different parenting styles, the parties had been successfully following the previous order, communicating in the best interests of the child for several years and operating "in harmony" under the concept of "[my] house, [my] rules, [your] house, [your] rules" — a concept that was, notably, introduced by the father.
Contrary to the majority's assertion, Family Court's decision does not reflect that it properly weighed all relevant factors when it assessed the matter of legal custody (see generally Friederwitzer v Friederwitzer, 55 NY2d 89, 93-94 [1982]; Matter of Virginia C. v Donald C., 114 AD3d 1032, 1033 [2014]; Matter of Schwartz v Schwartz, 144 AD2d 857, 859 [1988], lv denied 74 NY2d 604 [1989]). In determining that the mother should be stripped of her status as joint legal custodian, Family Court focused heavily on the mother's response to the child's alleged indiscretions. There is no dispute that the mother made a parenting mistake by being naive about the child's relationship with the boy and by failing to adequately supervise the child's use of social media. However, as evidenced by the record, the mother has since recognized and identified ways to address the child's social media use by listening to and following the family counselor's recommendations in this respect. While we agree with the majority that the mother should not have acquiesced to the child's wishes by allowing the child to see the boy on two occasions after the father indicated his disapproval of the relationship, we note that, on these occasions, the mother took precautions to ensure that the child and the boy were not alone together and that their contact was restricted. In our view, the mother's admitted mistake, standing alone, does not reflect an inability to adequately parent the child and does not justify the determination to strip her of joint legal custody.
With its focus primarily on the mother's mishandling of the child's alleged indiscretions, Family Court failed to sufficiently take into consideration other relevant factors to the determination of legal custody, such as the fact that the mother had been the child's primary caregiver for the majority of the child's life and has contributed to an environment where the child is able to thrive. Nor did Family Court, in its decision, give any perceivable consideration to the evidence establishing that the father had not ever attended the child's parent-teacher conferences, had not taken the child to routine medical and dental appointments and had attended only 2 of the 11 family counseling appointments that were set up to assist in repairing his relationship with the child.
Moreover, Family Court's directive that the father "shall solicit and reasonably consider" the mother's input regarding any major decisions involving the child is unworkable and vague, as it provides no guidance as to what constitutes a major decision and what qualifies as "solicit[ing] [*5]and reasonably consider[ing]" the mother's input. Such a directive has the potential to create more problems than it solves. By not allowing the mother to be involved in decision making for the child, as she has been throughout the child's life, it is the child who we are penalizing. In our view, it is in the best interests of the child that the mother and the father continue to have joint legal custody (see Ehrenreich v Lynk, 74 AD3d 1387, 1389-1390 [2010]; Matter of Blanchard v Blanchard, 304 AD2d at 1049). If after deliberate consultation with each other they cannot come to a consensus, then the father should have final decision-making authority with respect to any issues regarding the child's relationship status, the child's use of electronics (including cell phone) and the child's social media presence, while the mother should have final decision-making authority with respect to all other issues, such as the child's health and education. Further, while the parties have demonstrated a past ability to communicate in the best interests of the child, the parties should be mandated to engage in coparenting classes to learn how to navigate issues that will inevitably emerge as the child continues to develop and mature during her teenage years. Thus, we would reinstate the mother's joint legal custody status.
As for the father's violation petitions, even if we were to agree with the majority that the violations were proven, the penalty for the violations should not have resulted in a change of legal custody. In our view, the disposition penalizes the child by not having the mother jointly making decisions with the father. However, we disagree with the majority's conclusion that the mother willfully violated the 2011 order by failing to bring the child to the father's parenting time, failing to include the father in decision making regarding the child and discussing court proceedings with the child. The record demonstrates that the mother offered the father parenting time, which he repeatedly refused because it did not fall within his normally scheduled time. The child was clearly upset about the father's discovery of her text messages with the boy and the photographs. The father admittedly would not be flexible in addressing the child's feelings and emotions relating to these discoveries. In fact, the father acknowledged that, simply because some of the suggestions came from the child, he would not accept them. In addition, the record reflects that both parties — not just the mother — discussed court proceedings with the child. Furthermore, there was no court order in effect regarding the child and the boy's contact or the child's use of a cell phone (see Matter of Abram v Abram, 145 AD3d 1377, 1379 [2016]; Matter of Miller v Miller, 77 AD3d 1064, 1065-1066 [2010], lv dismissed and denied 16 NY3d 737 [2011]). As such, we would dismiss the father's violation petitions (see Matter of Palazzolo v Giresi-Palazzolo, 138 AD3d 866, 867 [2016]).
Pritzker, J., concurs.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Although the attorney for the child also filed a notice of appeal, he failed to file a brief.

Footnote 2: The photographs were discovered on the father's shared data drive, to which the child's phone was linked via the Internet.

Footnote 3: At the time of the hearing, the child had resumed visitation with the father.