Clark, J. (concurring in part and dissenting in part). We agree with the majority that there was a change in circumstances that warranted an inquiry into the best interests of the child. We further agree that the record supports the award of shared physical custody to petitioner (hereinafter the father) and respondent (hereinafter the mother). We disagree, however, with the majority’s conclusion that the record supports Family Court’s determinations that the mother should be divested of her status as joint legal custodian of the child and that she violated the 2011 order. Accordingly, we concur in part and respectfully dissent in part. As the majority recognizes, the mother and the father were not on the same page regarding the issue of the child’s relationship with the 15-year-old boy and the extent and manner in which she should be disciplined for her alleged transgressions. Nevertheless, this is not a situation where the parties’ joint decision making has so broken down that joint legal custody is no longer feasible (see Matter of Finkle v Scholl, 140 AD3d 1290, 1292 [2016]; Matter of Lynch v Tambaselo, 1 AD3d 816, 817 [2003]; Matter of Blanchard v Blanchard, 304 AD2d 1048, 1049 [2003]; compare Matter of Cheryl YY. v Cynthia YY., 152 AD3d 829, 833 [2017]; Matter of Spiewak v Ackerman, 88 AD3d 1191, 1192 [2011]). Indeed, the record established that, despite their significantly different parenting styles, the parties had been successfully following the previous order, communicating in the best interests of the child for several years and operating “in harmony” under the concept of “[my] house, [my] rules, [your] house, [your] rules”—a concept that was, notably, introduced by the father. Contrary to the majority’s assertion, Family Court’s decision does not reflect that it properly weighed all relevant factors when it assessed the matter of legal custody (see generally Friederwitzer v Friederwitzer, 55 NY2d 89, 93-94 [1982]; Matter of Virginia C. v Donald C., 114 AD3d 1032, 1033 [2014]; Matter of Schwartz v Schwartz, 144 AD2d 857, 859 [1988], lv denied 74 NY2d 604 [1989]). In determining that the mother should be stripped of her status as joint legal custodian, Family Court focused heavily on the mother’s response to the child’s alleged indiscretions. There is no dispute that the mother made a parenting mistake by being naive about the child’s relationship with the boy and by failing to adequately supervise the child’s use of social media. However, as evidenced by the record, the mother has since recognized and identified ways to address the child’s social media use by listening to and following the family counselor’s recommendations in this respect. While we agree with the majority that the mother should not have acquiesced to the child’s wishes by allowing the child to see the boy on two occasions after the father indicated his disapproval of the relationship, we note that, on these occasions, the mother took precautions to ensure that the child and the boy were not alone together and that their contact was restricted. In our view, the mother’s admitted mistake, standing alone, does not reflect an inability to adequately parent the child and does not justify the determination to strip her of joint legal custody. With its focus primarily on the mother’s mishandling of the child’s alleged indiscretions, Family Court failed to sufficiently take into consideration other relevant factors to the determination of legal custody, such as the fact that the mother had been the child’s primary caregiver for the majority of the child’s life and has contributed to an environment where the child is able to thrive. Nor did Family Court, in its decision, give any perceivable consideration to the evidence establishing that the father had not ever attended the child’s parent-teacher conferences, had not taken the child to routine medical and dental appointments and had attended only 2 of the 11 family counseling appointments that were set up to assist in repairing his relationship with the child. Moreover, Family Court’s directive that the father “shall solicit and reasonably consider” the mother’s input regarding any major decisions involving the child is unworkable and vague, as it provides no guidance as to what constitutes a major decision and what qualifies as “soliciting] and reasonably considering]” the mother’s input. Such a directive has the potential to create more problems than it solves. By not allowing the mother to be involved in decision making for the child, as she has been throughout the child’s life, it is the child who we are penalizing. In our view, it is in the best interests of the child that the mother and the father continue to have joint legal custody (see Ehrenreich v Lynk, 74 AD3d 1387, 1389-1390 [2010]; Matter of Blanchard v Blanchard, 304 AD2d at 1049). If after deliberate consultation with each other they cannot come to a consensus, then the father should have final decision-making authority with respect to any issues regarding the child’s relationship status, the child’s use of electronics (including cell phone) and the child’s social media presence, while the mother should have final decision-making authority with respect to all other issues, such as the child’s health and education. Further, while the parties have demonstrated a past ability to communicate in the best interests of the child, the parties should be mandated to engage in coparenting classes to learn how to navigate issues that will inevitably emerge as the child continues to develop and mature during her teenage years. Thus, we would reinstate the mother’s joint legal custody status. As for the father’s violation petitions, even if we were to agree with the majority that the violations were proven, the penalty for the violations should not have resulted in a change of legal custody. In our view, the disposition penalizes the child by not having the mother jointly making decisions with the father. However, we disagree with the majority’s conclusion that the mother willfully violated the 2011 order by failing to bring the child to the father’s parenting time, failing to include the father in decision making regarding the child and discussing court proceedings with the child. The record demonstrates that the mother offered the father parenting time, which he repeatedly refused because it did not fall within his normally scheduled time. The child was clearly upset about the father’s discovery of her text messages with the boy and the photographs. The father admittedly would not be flexible in addressing the child’s feelings and emotions relating to these discoveries. In fact, the father acknowledged that, simply because some of the suggestions came from the child, he would not accept them. In addition, the record reflects that both parties—not just the mother—discussed court proceedings with the child. Furthermore, there was no court order in effect regarding the child and the boy’s contact or the child’s use of a cell phone (see Matter of Abram v Abram, 145 AD3d 1377, 1379 [2016]; Matter of Miller v Miller, 77 AD3d 1064, 1065-1066 [2010], lv dismissed and denied 16 NY3d 737 [2011]). As such, we would dismiss the father’s violation petitions (see Matter of Palazzolo v Giresi-Palazzolo, 138 AD3d 866, 867 [2016]). Pritzker, J., concurs. Ordered that the order is affirmed, without costs.