Matter of Donald G. v Hope H. (2018 NY Slip Op 02372)





Matter of Donald G. v Hope H.


2018 NY Slip Op 02372


Decided on April 5, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 5, 2018

523476

[*1]In the Matter of DONALD G., Petitioner,
v
HOPE H., Appellant. (And Five Other Related Proceedings.)

Calendar Date: February 23, 2018

Before: Garry, P.J., Egan Jr., Lynch, Rumsey and Pritzker, JJ.


Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for appellant.
Rachel A. Rappazzo, Schenectady, attorney for the child.


Garry, P.J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Fulton County (Skoda, J.), entered July 19, 2016, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2011). The mother and father shared joint legal and physical custody pursuant to a 2015 order, entered upon their consent, that set forth a schedule of parenting time for both parties. Between August 2015 and March 2016, the father filed four violation petitions alleging that the mother had failed to adhere to this schedule, as well as a modification petition seeking sole
legal and physical custody, alleging that the child had been sexually abused, and that the mother had coached the child to claim that the father was the perpetrator. The mother also filed a modification petition seeking sole legal and physical custody. After a fact-finding hearing addressing all of the petitions, Family Court determined that the mother had coached the child to make sexual abuse allegations against the father and had repeatedly prevented the father from exercising his scheduled parenting time. The court found that these facts gave rise to a change in circumstances and awarded sole legal and physical custody of the child to the father, with supervised parenting time for the mother. The mother appeals.
Initially, the mother contends that Family Court erred by allowing the child's treating sexual abuse counselor, who was qualified as an expert in sexual abuse treatment, to opine upon [*2]the respective fitness of each parent as custodians. "Whether a witness may testify as an expert rests in the sound discretion of the court" (Matter of Evelyn B., 37 AD3d 991, 993 [2007]; see Matter of Islam v Lee, 115 AD3d 952, 954 [2014]). A court may not delegate its ultimate responsibility to determine what custodial arrangement will best serve a child's best interests to a psychological or psychiatric expert, and the custody recommendations of such experts are not determinative (see Matter of Imrie v Lyon, 158 AD3d 1018, 1021 [2018]; Matter of Montoya v Davis, 156 AD3d 132, 138 [2017]). Nevertheless, such recommendations are "worthy of serious consideration" when they are based upon evidence in the record (Matter of Aldrich v Aldrich, 263 AD2d 579, 579 [1999]; see Matter of Bates v Bates, 290 AD2d 732, 733 [2002]).
Here, the counselor testified that she had a Master's degree in social work, had over 23 years of experience as a psychotherapist and "hundreds of hours of training" as a trauma specialist, had been specializing in the treatment of sexually abused children for about 10 years, and had been providing sexual abuse counseling at the child advocacy center where the child was treated for about five years. Family Court determined, without objection, that she was qualified as an expert in child sexual abuse treatment. The counselor then testified that she had conducted 17 treatment sessions with the child for the purpose of an "extended assessment" to determine whether an injury that the child had suffered had been caused by sexual abuse or by an accident. The mother participated in nine of these sessions and the father participated in two sessions.
Based upon clinical impressions formed during these sessions, the counselor opined that the child had been sexually abused. She further opined that, although she could not determine who had abused the child, the father was not the perpetrator, and that the mother had coached the child to claim that the father had abused her. The counselor based her opinion regarding the coaching partially upon statements made by the child. First, in the mother's presence, the child stated that the father had abused her; later, outside the mother's presence, the child revealed that the mother had told her to make this claim. The counselor's opinion about the mother's coaching was also based upon the child's behavior in the mother's company, including clinginess, a strong unwillingness to separate from the mother, and "bizarre laughter." The counselor believed that this anxious behavior reflected the discomfort of the child arising from what she was being asked to do, and her uncertainty as to what she was permitted to say. By contrast, the counselor observed that when the child was in the father's company, or was transported to her counseling sessions by the father or his fiancée rather than by the mother, the unusual behaviors disappeared. The counselor described the child's interactions with the father as "[e]asygoing, healthy, normal . . . playful and relaxed," and stated that she would not expect the child to interact so comfortably with the father if he were her abuser.
The counselor testified that she did not believe that the mother was psychiatrically stable; she had, among other things, left a profane, belligerent message on the counselor's voice mail, made disparaging remarks about the counseling in the child's presence, and requested an emergency counseling session based upon a purported new disclosure by the child that, upon scrutiny, proved not to have occurred. When asked for her opinions of the parties' relative fitness as custodians, the counselor opined, over the mother's objection, that she did not believe that the mother was an appropriate custodian because of this lack of stability. She opined that the father was an appropriate custodian, noting that he had permitted the child to come to counseling although the sexual abuse allegations had originally been made against him, had not made disparaging remarks and had "allowed the process to proceed in a healthy manner and . . . ha[d] given [the] child the chance to heal."
Upon review, it appears that, although the counselor had not conducted a formal custody evaluation, her opinions on the parties' relative fitness were based upon her observations of them [*3]and upon her professional analysis of evidence in the record. Family Court's written decision reveals that it neither improperly delegated its authority to the counselor nor relied solely upon her opinion of the parties' fitness in making its custody determination. We find no abuse of discretion (see Matter of Islam v Lee, 115 AD3d at 954; Matter of Stellone v Kelly, 45 AD3d 1202, 1204 [2007]; Matter of Vezina v Vezina, 8 AD3d 1047, 1048 [2004]).
The mother next contends that Family Court erred in permitting the father to admit into evidence three audio recordings of various comments made by the mother without laying a proper foundation. This claim has been waived as to two of the recordings — one of which was admitted for impeachment purposes, and one of which was admitted as factual evidence — as it was not preserved by an appropriate objection (see CPLR 4017, 5501 [a] [3]; Matter of Constance NN., 47 AD3d 986, 986 [2008]). If the contention had been preserved, we would have found that it lacked merit, as the mother identified the voice on each recording as her own and acknowledged that the recordings fairly represented statements that she had made (see People v Wise, 46 NY2d 321, 326 [1978]; Matter of Hirsh v Stern, 74 AD3d 967, 968 [2010]). Further, the mother was given the required opportunity to explain the inconsistency between her hearing testimony and her remarks on the recording admitted for impeachment purposes (see generally People v Laurey, 24 AD3d 1107, 1109 [2005], lv denied 6 NY3d 815 [2006]).
The mother did object to admission of the third recording on foundational grounds. Family Court overruled the objection and admitted the recording into evidence for impeachment purposes on the ground that the mother had acknowledged that the recording contained her voice, and that she and the father had had the recorded conversation. Here, the mother was not given the requisite opportunity to explain the inconsistency (see id.), and her counsel did not specifically object to this failure. If counsel had done so, we would have found that the error was harmless; the court cited other evidence as the basis for its finding that the mother's testimony was "not credible as a whole" and made no reference to this recording (see Matter of Wise v Burks, 61 AD3d 1058, 1059 [2009]; Matter of Shane MM. v Family & Children Servs., 280 AD2d 699, 701-702 [2001]).
The mother was not deprived of meaningful representation by her counsel's failure to object to the alleged lack of foundation for the admission of these recordings. Any objection as to the recordings for which proper foundations were laid would have "ha[d] little or no chance of success" (Matter of Ritter v Moll, 148 AD3d 1427, 1429 [2017] [internal quotation marks and citations omitted]). As for the failure to object to the error that we found to be harmless, no showing was made "both that the objection omitted by trial counsel [was] a winning argument . . . and that the objection was one that no reasonable . . . lawyer, in the context of the trial, could have thought to be not worth raising" (People v Ramsey, 134 AD3d 1170, 1171 [2015] [internal quotation marks and citations omitted]). The mother's remaining claims of ineffective assistance — that her counsel failed to object to the counselor's testimony that the mother was psychiatrically unstable and to certain purported hearsay testimony — are unavailing, as "[t]he mother did not demonstrate the absence of strategy or other legitimate explanations for counsel's alleged shortcomings" (Matter of DeVita v DeVita, 155 AD3d 1587, 1588 [2017] [internal quotation marks and citation omitted]; see Matter of Clark v Zwack, 40 AD3d 1224, 1226-1227 [2007], lv denied ___ NY3d ___ [Mar. 22, 2018]). Our review of the record as a whole reveals that the mother's counsel, among other things, made numerous appropriate objections, cross-examined the father's witnesses, introduced evidence on the mother's behalf and, thus, provided meaningful representation (see Matter of Tracey L. v Corey M., 151 AD3d 1209, 1212 [2017]).
Egan Jr., Lynch, Rumsey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.