Matter of Sue-Je F. v Alan G. (2018 NY Slip Op 07999)





Matter of Sue-Je F. v Alan G.


2018 NY Slip Op 07999


Decided on November 21, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 21, 2018

526400

[*1]In the Matter of SUE-JE F., Respondent,
v
ALAN G., Appellant.

Calendar Date: October 15, 2018

Before: McCarthy, J.P., Egan Jr., Devine, Clark and Aarons, JJ.


Gordon, Tepper & DeCoursey LLP, Glenville (Jennifer P. Rutkey of counsel), for appellant.
Andrea J. Mooney, Ithaca, for respondent.
Susan B. McNeil, Ithaca, attorney for the child.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeal from an order of the Family Court of Tompkins County (Cassidy, J.), entered August 24, 2017, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child (born in 2006). Following the birth of the child, the mother and the father briefly resided together in Bloomington, Indiana. In 2007, the mother and the father separated and, upon application in Indiana, the mother was granted sole legal and physical custody of the child and permitted to move, with the child, to Berkley, California to attend graduate school, with parenting time extended to the father. In 2008, the mother was offered a job in the City of Ithaca, Tompkins County and, upon further application in Indiana, the court permitted her to relocate with the child to Tompkins County, over the father's continued objections. In 2010, the mother was ultimately granted sole legal and physical custody of the child by an Indiana court, with a visitation schedule to accommodate the father's work/travel schedule. In January 2016, the mother filed, as relevant here, an amended petition in Tompkins County to modify the prior order of custody from Indiana [FN1]. Following a fact-finding hearing and Lincoln hearing, Family [*2]Court granted the mother's modification petition, modified the father's parenting time to every other weekend, set forth a parenting schedule providing for visitation during school holidays and summer vacation and awarded the mother certain counsel fees. The father now appeals.
It is well settled that "[a] parent seeking to modify an existing custody order first must demonstrate that a change in circumstances has occurred since the entry thereof that is sufficient to warrant the court undertaking a best interests analysis in the first instance; assuming this threshold requirement is met, the parent then must show that modification of the underlying order is necessary to ensure the child's continued best interests" (Matter of Jason HH. v Kylee II., 162 AD3d 1144, 1145 [2018] [internal quotation marks and citation omitted]; accord Matter of Tracey L. v Corey M., 151 AD3d 1209, 1210 [2017]). Here, the mother demonstrated that a change in circumstances has occurred since entry of the prior custody order that warrants an analysis of the best interests of the child. Notably, the child was only four years old when the prior custody order was entered and, since such time, the mother and the child have relocated to Tompkins County, where the child is now enrolled in school and is engaged in numerous extracurricular activities. The father has also relocated to Tompkins County and regularly exercises his parenting time and is involved in the child's education and activities [FN2]
. Although the relationship between the mother and the father was acrimonious after entry of the prior order, the evidence at the fact-finding hearing demonstrated that the parents' ability to communicate has continued to deteriorate to the point where they can no longer effectively work together pursuant to the prior custody and visitation schedule for the betterment of the child (see generally Matter of Cameron ZZ. v Ashton B., 148 AD3d 1234, 1235 [2017]; Matter of Cid v DiSanto, 122 AD3d 1094, 1096 [2014]). Notably, the father has frequently invoked law enforcement with respect to custodial exchanges, calling the police on one occasion after he and the mother had an apparent miscommunication as to the date of a particular exchange, and he has threatened the use of police intervention on various other occasions. A review of the parents' email exchanges demonstrates that the father routinely used hostile and antagonistic language when addressing the mother and, ultimately, made communication exceedingly more difficult by mandating that all direct communications from the mother to him were to be communicated solely through their respective legal counsel.[FN3]
Additionally, despite the mother having sole legal and physical custody of the child pursuant to the prior order, the father frequently usurped the mother's decision-making authority by making, or attempting to make, unilateral decisions with respect to, among other things, the child's health care and educational decisions in contravention of the prior order (see e.g. Matter [*3]of Horowitz v Horowitz, 154 AD3d 1207, 1208 [2017])[FN4]. Further, since entry of the prior order, the father subsequently married and had another child. The evidence at the fact-finding hearing revealed that the police were called to the father's residence on three separate occasions to investigate certain alleged domestic incidents between him and his wife [FN5]. Although no arrests were made, at least two of these incidents occurred in the presence of the subject child, the most recent incident prompting the mother to commence the subject modification proceeding (see e.g. Matter of Fountain v Fountain, 130 AD3d 1107, 1108 [2015]). Accordingly, given the parties' increasingly acrimonious relationship, their inability to effectively communicate, the father's failure to comply with certain provisions of the prior order and the indicated incidents of domestic violence that occurred in the child's presence, we find that there was ample evidence presented at the fact-finding hearing demonstrating a change in circumstances to warrant Family Court's analysis of the child's best interests (see Matter of Perry v Leblanc, 158 AD3d 1025, 1027 [2018]; Matter of Cid v DiSanto, 122 AD3d at 1096).
When conducting an analysis as to the child's best interests, we must consider such relevant factors as "each parent's ability to furnish and maintain a suitable and stable home environment for the child, past performance, relative fitness, ability to guide and provide for the child's overall well-being and willingness to foster a positive relationship between the child and the other parent" (Matter of Romero v Guzman, 158 AD3d 997, 999 [2018] [internal quotation marks and citations omitted], lv denied 31 NY3d 908 [2018]). Here, there is no question that the mother and the father have each developed a loving relationship with the child and are both concerned with, and directly engaged in, providing for the child's educational and overall well-being and development. They are also both gainfully employed/self-employed and are able to provide an adequate and sufficient home for the child. Notably, by all accounts, the child is excelling at school, has developed friendships and is engaged in numerous extracurricular activities, including horseback riding, swimming, gymnastics, Math Olympiad, trombone and violin.
With regard to the parties' willingness to foster a positive relationship with the other parent, although the mother has indicated a willingness to establish a positive relationship with the father, in contrast, the record demonstrates that father has been largely unwilling to foster a similarly positive relationship with the mother. The father routinely criticized and disparaged the mother's parenting in front of the child and showed an utter lack of concern for how such comments would effect the child and her relationship with each parent. The father has also failed to adequately shield the child from the specifics of the parties' ongoing custody dispute, pressuring the child on at least one occasion to request additional parenting time on his behalf. Additionally, the father's conduct in unilaterally making decisions on behalf of the child without informing the mother or obtaining her prior consent demonstrated both an inability to abide by the prior court order or inhibit his inclinations to try and exert control over the parties' custodial [*4]arrangement. Thus, considering the relevant factors and giving deference to Family Court's credibility determinations, we find that the modified custody order appropriately took into consideration the father's conduct and the need to accommodate for the child's school and extracurricular activities schedule, while maintaining stability in the child's home life and simultaneously providing the father with regular and meaningful access to the child, with ample parenting time being provided for him to continue to travel with the child and engage in other significant and meaningful activities as he has done in the past (see Matter of John VV. v Hope WW., 163 AD3d 1088, 1091 [2018]; Kimberly C. v Christopher C., 155 AD3d 1329, 1336 [2017]). Accordingly, we find that Family Court's determination modifying the prior custody and visitation order was supported by a sound and substantial basis in the record, and we need not disturb same.
We do find merit to the father's contention that Family Court improperly granted counsel fees of $2,670 to the mother without first holding a hearing. Significantly, the father never consented to an award of counsel fees based solely upon the parties' written submissions (see Bush v Bush, 46 AD3d 1140, 1141 [2007]; Redgrave v Redgrave, 304 AD2d 1062, 1066 [2003]) and, therefore, Family Court should have held a hearing with respect to the financial circumstances of the parties before making an award (see Matter of Jennifer G. v Benjamin H., 84 AD3d 1433, 1436 [2011]; Barnaby v Barnaby, 259 AD2d 870, 872 [1999]; compare Yarinsky v Yarinsky, 25 AD3d 1042, 1042-1043 [2006])[FN6]. Thus, while a counsel fee award may indeed be merited, the precise amount of such an award must await the outcome of an evidentiary hearing before Family Court.
McCarthy, J.P., Devine, Clark and Aarons, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as awarded petitioner counsel fees; matter remitted to the Family Court of Tompkins County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: In November 2015, the mother filed her initial petition to modify the prior custody and visitation order as well as a family offense petition. Family Court thereafter issued two interim orders which, among other things, modified the father's visitation schedule to every other weekend, pending the outcome of the proceeding. The mother also subsequently filed an amended family offense petition, which was dismissed prior to the fact-finding hearing.

Footnote 2:While the father has maintained a residence in Tompkins County for years, he nevertheless continued to assert that his domicile remained in Indiana.

Footnote 3: Perhaps tellingly, the father acknowledged that, although he required the mother to communicate via counsel, he did not intend for there to be any corresponding duty upon himself to do the same.

Footnote 4: For instance, without the mother's knowledge and/or consent, the father attempted to change the child's kindergarten and second grade teachers. He also enrolled the child in numerous extracurricular activities without the mother's knowledge or consent, which served to infringe on the mother's parenting time, and contacted the child's pediatrician with regard to obtaining a referral for dietary counseling.

Footnote 5: The father and his wife have since divorced.

Footnote 6: Family Court appropriately took into consideration the fact that the father's conduct served to frustrate the interim orders issued by that court; however, standing alone, this determination was not sufficient to justify an award of counsel fees absent an evidentiary hearing.