■ In the Matter of Rachel M. Lowe, Appellant, v Charles H. O'Brien, Jr., Respondent. (And Three Other Related Proceedings.) [917 NYS2d 363]—

Stein, J. Appeal from an order of the Family Court of Ulster County (Feeney, J.H.O.), entered January 7, 2010, which, among other things, partially granted respondent's application, in four proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of two sons, Charles III (hereinafter Chase) and Blake (born in 1997 and 2001, respectively). The mother lives with her husband, Dennis Lowe, Lowe's 17-year-old son and another son of hers from a different relationship.* The father lives with his parents. In 2004, Family Court entered an order on stipulation, awarding the parties joint legal custody of the two subject children, with the mother having primary residential custody and the father having parenting time. In September 2008, the mother commenced the first of these proceedings seeking to modify the 2004 order so as to be awarded sole legal custody of the children. In response, the father cross-petitioned to modify the order, requesting sole custody of the children on the basis that the mother's home was an unsafe environment for the children. Shortly thereafter, the father filed another cross petition, seeking immediate temporary custody on the ground that Lowe was abusing the children. In January 2009, Family Court directed the temporary removal of the children from the mother to the father. After a short period of time, the mother petitioned, by emergency application, for vacatur of that order, seeking the return of the children to her custody.

---
* These children are not the subject of these proceedings.

In February 2009, Family Court issued a temporary order awarding the parties joint legal custody, with primary residential custody of Chase awarded to the father and primary residential custody of Blake to the mother. After a fact-finding hearing and a *Lincoln* hearing with each of the children, the court issued an order continuing joint legal custody and primary residential custody of Blake with the mother, but placing primary residential custody of Chase with the father and specifying parenting time for both parties with the children. The mother now appeals and we affirm.

The father's modification petitions were based on his allegations of mistreatment of the children by Lowe. The father testified that he observed bruising on Chase's back and shoulders after he returned home from a weekend with the mother and that Chase told him it occurred as a result of Lowe grabbing him from behind when he was running up the stairs. Such hearsay is admissible in a custody proceeding when it is sufficiently corroborated by other evidence (*see Matter of Bartlett v Jackson*, 47 AD3d 1076, 1077 [2008], *lv denied* 10 NY3d 707 [2008]). In the instant matter, Chase's statements were corroborated by the testimony of the father—apparently credited by Family Court—that he observed marks on Chase's back and a domestic incident report which indicated that the State Trooper investigating the father's allegations also observed an abrasion in the general area that the father had indicated. In addition, although Lowe denied that he had ever struck the children, he testified that he had physically restrained them to prevent them from fighting with each other. Chase's testimony at the *Lincoln* hearing provided further corroboration of his out-of-court statements.

Significantly, it is also undisputed that, while both children were residing together at the mother's residence, they had become progressively involved in frequent physical altercations—which even the mother described as "scary" and "violent" at times—and that there was increased conflict between Chase and Lowe and a deterioration in Chase's relationship with the mother since the 2004 order. Regardless of whether Lowe's actions constituted excessive corporal punishment, as the father alleged, or merely a reasonable attempt to break up an altercation between Chase and Blake, as the mother and Lowe contended, according deference to Family Court's credibility assessments (*see Matter of Rue v Carpenter*, 69 AD3d 1238, 1240 [2010]), the evidence demonstrated a " 'sufficient change in circumstances reflecting a real need for change [in the established custody arrangement] in order to insure the

continued best interest[s] of the child[ren]' " (*id.* at 1239, quoting *Matter of Martin v Martin,* 61 AD3d 1297, 1298 [2009]). Thus, Family Court was warranted in proceeding to a best interest analysis (*see Matter of Henderson v MacCarrick,* 74 AD3d 1437, 1439 [2010]).

Turning to the issue of whether the change in Chase's residential custody was in the children's best interests, we likewise conclude that Family Court's determination was supported by the record and reflected its consideration of the relevant factors, " 'including the quality of each parent's home environments, their past performance and stability, and each parent's relative fitness and ability to provide for the child's intellectual and emotional development' " (*Matter of Paul T. v Ann-Marie T.,* 75 AD3d 788, 790 [2010], *lv denied* 15 NY3d 713 [2010], quoting *Matter of Calandresa v Calandresa,* 62 AD3d 1055, 1056 [2009]). Several witnesses testified that Blake and Chase had been involved in numerous physical fights with each other on a regular basis. While we recognize that keeping siblings together is generally preferred, in certain cases "such an arrangement may not always be in a particular child's best interest" (*Matter of Decker v Lackos,* 41 AD3d 916, 918 [2007]; *see Matter of Delafrange v Delafrange,* 24 AD3d 1044, 1046 [2005], *lv denied* 8 NY3d 809 [2007]). Here, Blake's therapist testified that the children may be better served by being apart because the situation between them may improve if Chase and the mother live apart for a while and the family members continue to work on getting along with each other. Furthermore, the therapist for Chase testified that Chase was uncomfortable around Lowe, feels isolated, questions the mother's commitment to him and believes that the mother, Blake and Lowe are all against him. The therapist also opined that returning Chase to the mother's home would enhance his anxiety and could exacerbate his poor behavior. In contrast, the record reflects a close bond between Blake and the mother.

While there was also evidence suggesting deficiencies in the father's parenting—including, among other things, inadequate supervision and a lack of communication and cooperation with the children's schools—the record shows that Chase is a good student and, unlike Blake, his academic performance did not change when he went to live with his father. We also share the mother's concern regarding the father's alleged attempts to undermine the children's relationship with her and Lowe. However, based upon the totality of the evidence and giving due deference to Family Court's findings of fact and credibility assessments, we find that there is a sound and substantial basis

in the record for the court's determination that the change in Chase's custody was in the best interests of the children. Moreover, given his age and level of maturity, Chase's express wishes, while not dispositive, are entitled to consideration (*see Matter of Burch v Willard*, 57 AD3d 1272, 1273 [2008]; *Matter of Oddy v Oddy*, 296 AD2d 616, 617 [2002]). Finally, we note that Family Court's determination comports with the positions of each of the children's attorneys with regard to the placement of their respective clients (*see Matter of Diffin v Towne*, 47 AD3d 988, 992 [2008], *lv denied* 10 NY3d 710 [2008]).

Mercure, J.P., Rose, Lahtinen and Malone Jr., JJ., concur. Ordered that the order is affirmed, without costs.