In the Matter of RUSSELL D. WILSON, Appellant, v KAITLIN HENDRICKSON, Respondent. (And Another Related Proceeding.) [931 NYS2d 170]—

Peters, J.P.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unmarried parents of a daughter born in 2005. Pursuant to a July 2008 order entered on consent, the parties shared joint legal custody and alternated physical custody weekly. In 2010, when the child's attendance at kindergarten was imminent and the parties resided in different

school districts, these proceedings were commenced. Both parents sought physical custody so that the child could attend a school in their locale. The mother also alleged the father's lack of gainful employment and inferior living arrangements as a basis for modification. Following a fact-finding hearing, Family Court granted physical custody to the mother with ample visitation time to the father, including the first three weekends of each month and alternate summer vacations. The father now appeals.

Initially, we are unpersuaded by the father's contention that Family Court erred in limiting the evidence presented to events occurring after the July 2008 consent order. Notably, at a point early on in the hearing, Family Court stated its intent to so limit the proof, and the father's counsel consented to this limitation (*see Matter of Morgan v Becker*, 245 AD2d 889, 892 [1997]; *cf. Matter of Sharyn PP. v Richard QQ.*, 83 AD3d 1140, 1143 [2011]). Furthermore, while custody modification proceedings require a full and comprehensive hearing and proof relevant to the best interests of the child should not be unduly restricted (*see Matter of Tarrance v Mial*, 22 AD3d 965, 966 [2005]; *Matter of Stukes v Ryan*, 289 AD2d 623, 624 [2001]), it is equally true that Family Court is "vested with broad discretion to determine the scope of the proof to be adduced" (*Matter of Painter v Painter*, 211 AD2d 993, 995 [1995]; *see Matter of Cool v Malone*, 66 AD3d 1171, 1173 [2009]; *Matter of Tarrance v Mial*, 22 AD3d at 966; *Matter of Stukes v Ryan*, 289 AD2d at 624). Since each party's petition relied solely upon recent conduct and/or circumstances as a basis to modify the prior custody order, we cannot conclude that Family Court abused its discretion in limiting the proof in this regard (*see Matter of Tarrance v Mial*, 22 AD3d at 966; *Matter of Palmer v Palmer*, 284 AD2d 612, 613-614 [2001]; *Matter of Risman v Linke*, 235 AD2d 861, 861-862 [1997]).

Next, we find a sound and substantial basis for Family Court's award of primary physical custody to the mother. Alteration of an existing custody arrangement "requires a showing of a change in circumstances reflecting a real need for change in order to insure the continued best interest[s] of the child" (*Matter of Henderson v MacCarrick*, 74 AD3d 1437, 1439 [2010] [internal quotation marks and citations omitted]; *see Matter of Dobies v Brefka*, 83 AD3d 1148, 1149 [2011]; *Matter of Siler v Wright*, 64 AD3d 926, 928 [2009]). The parties do not challenge Family Court's finding that the child's attainment of school age, coupled with the fact that the mother and father reside in different school districts, constitute a sufficient change in circumstances warranting a modification of the shared physical custody

arrangement (*see Matter of Hughes v Hughes*, 80 AD3d 1104, 1104 [2011]; *Ehrenreich v Lynk*, 74 AD3d 1387, 1390 [2010]; *Matter of Williams v Boger*, 33 AD3d 1091, 1092 [2006]; *Matter of Berghorn v Berghorn*, 273 AD2d 595, 596 [2000]). To assess which custodial arrangement would serve the child's best interests, the court was required to take into consideration a variety of factors, such as "the quality of each parent's home environments, their past performance and stability, and each parent's relative fitness and ability to provide for the child['s] intellectual and emotional development" (*Matter of Hughes v Hughes*, 80 AD3d at 1104 [internal quotation marks and citations omitted]; *see Matter of Lowe v O'Brien*, 81 AD3d 1093, 1095 [2011], *lv denied* 16 NY3d 713 [2011]).

Here, Family Court found that, although both the mother and father are loving parents and have been able to effectively coparent their daughter, the mother could afford "more stability, guidance and consistency in the child's daily life." More specifically, the court noted that the father has no vehicle and must rely on others for transportation, and maintains only sporadic seasonal employment as a landscaper working approximately 20 hours per week. Although the father asserted that his gross income the previous year was $50,000, he receives public assistance in the form of Section 8 housing and food stamps. In that regard, the father lives on one level of his sister's house, with a significant portion of the rent subsidized through Section 8, while his sister and her husband live in the basement with their son. Family Court stressed the fact that, while living with her father, the child does not attend a day care or preschool program, but instead stays home during the day and is mainly in the company of adults. Testimony at the hearing also revealed that the father inappropriately discussed school and custody issues with the child, causing her to become upset and cry.

The mother, on the other hand, has steady employment and lives with her boyfriend and their infant child in a two-bedroom apartment, where the subject child has her own room. During the mother's scheduled weeks of custodial time, the child regularly visits extended family for family gatherings at the home of her maternal grandparents, who live approximately 15 minutes away from the mother and are always available as a resource. Furthermore, as Family Court found, the mother enrolled the child in a "pre-K" program across the street from her place of employment where, contrary to her environment during the father's custodial time, the child is able to make friends and interact with children her own age. Notably, the

mother pays tuition for the "pre-K" program every week in order to keep a slot open for the child, even though she has the child every other week and receives no financial contribution from the father. The evidence also established that the mother has demonstrated a willingness to facilitate the father's custodial time by transporting the child to and from all visits with him.

Contrary to the father's contention, the fact that Family Court may have placed more importance on certain evidence in deciding what was in the child's best interests does not mean that it failed to consider all of the relevant factors (*see Matter of Wentland v Rousseau*, 59 AD3d 821, 823 [2009]; *see also Malcolm v Jurow-Malcolm*, 63 AD3d 1254, 1257 n [2009]). Upon our review of the record and according deference to Family Court's factual findings and credibility determinations (*see Matter of Arieda v Arieda-Walek*, 74 AD3d 1432, 1434 [2010]), we cannot say that the court failed to properly weigh the relevant factors or that its determination to award physical custody to the mother lacks a sound and substantial basis (*see Matter of Hughes v Hughes*, 80 AD3d at 1105; *Matter of Richardson v Alling*, 69 AD3d 1062, 1063 [2010]; *Matter of Dickerson v Robenstein*, 68 AD3d 1179, 1180 [2009]; *Matter of Smith v Smith*, 61 AD3d 1275, 1278 [2009]).

Spain, Lahtinen, Stein and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.