Lynch, J.
 

 Appeal from an order of the Family Court of Schenectady County (Powers, J.), entered December 8, 2015, which, among other things, dismissed petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, for modification of a prior custody order.
 

 Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a daughter (born in 2009). An order of custody on stipulation was issued in June 2014 granting the parties joint legal custody of the child, with primary physical custody to the father. The mother received parenting time Friday evenings from 6:00 p.m. to 8:00 p.m. and Saturdays from noon to 6:00 p.m. Despite the stipulation, more than a dozen petitions for enforcement of visitation, custody modification and family offenses quickly ensued — the bulk of which were filed by the mother. Following a trial over five non-consecutive days in 2015, Family Court awarded the father sole legal and primary physical custody of the child. The mother, who conceded that she did not exercise parenting time on Friday evenings, retained the Saturday afternoon visitation, conditioned on her boyfriend not being present. The mother appeals.
 

 We affirm. To begin, we find no merit to the mother’s assertion that her due process rights were violated. Her contention is that she was not put on notice that a change in circumstances was at issue based on the breakdown in the parties’ relationship. Beyond the fact that the mother filed three custody modification petitions raising the issue, the parties directly addressed their failing relationship throughout the hearing. To modify an existing order, a parent must “demonstrate [ ] a change in circumstances that warrants an inquiry into the best interests of the child” (Matter of Schlegel v Kropf, 132 AD3d 1181, 1182 [2015]). As Family Court duly recognized, the mother was cohabiting with the boyfriend when the parties entered into the June 2014 order; as such, the boyfriend’s status as a risk level 2 sex offender does not constitute a change in circumstances. That said, Family Court properly discerned that the parties’ acrimonious relationship had deteriorated to the point of virtually no communication — a development that provides a sound and substantial basis for the court’s determination that joint custody was no longer feasible (see Matter of Rutland v O’Brien, 143 AD3d 1060, 1061-1062 [2016]).
 

 Having so determined, the further question is what “custodial arrangement would promote the best interests of the child [ ]” (Matter of Greene v Robarge, 104 AD3d 1073, 1075 [2013]). The record validates Family Court’s observation that the father “has been the parent primarily responsible for the day to day care of the child.” In contrast, the mother has made limited efforts to be engaged in the child’s life, blaming the father for not keeping her informed. While each party blames the other for the impasse between them — and neither is blameless — the record does show that the father has regularly provided all the transportation for the Saturday visits and the mother has taken no initiative to be informed as to the child’s well-being. A key stumbling block between the parties is the mother’s boyfriend, with whom the mother has two children, ages 3 and 2 at the time of the hearing. For her part, the mother maintains that the boyfriend poses no threat to the child. Family Court, however, found that the father’s concerns about the child’s safety in the boyfriend’s presence were not unreasonable. There is testimony supportive of the mother’s position. In particular, the mother presented the testimony of Katerina Colistra, a psychologist who worked with the boyfriend in a specialized sex offender treatment program. Colistra testified that the boyfriend was a low risk to reoffend, explaining that his underlying sex offense was an expression of anger, not sexual deviancy. The problem with that thesis, however, is that the boyfriend expressed marked hostility with the father and vice versa. When confronted on cross-examination as to how that relationship might affect the boyfriend’s behavior, Colistra’s response was equivocal, saying that the risk would depend on the information provided to her. Particularly troubling in this regard is the physical altercation that took place between the boyfriend and the father during an exchange at the end of a Saturday visitation in February 2015. Although Family Court was unable to resolve which party was the instigator of the altercation, the court did find that the mother prompted the boyfriend to be present. Giving due deference to Family Court’s assessment of witness credibility, we conclude that there is a sound and substantial basis in the record for the court’s determination that the award of sole legal custody to the father, with restricted parenting time to the mother, is in the child’s best interests. Notably, Family Court also included several directives to facilitate information sharing and communications between the parties and a safe place for every exchange of the child.
 

 Egan Jr., J.P., Rose and Mulvey, JJ., concur.
 

 Ordered that the order is affirmed, without costs.