Matter of Cameron ZZ. v Ashton B. (2020 NY Slip Op 02842)





Matter of Cameron ZZ. v Ashton B.


2020 NY Slip Op 02842


Decided on May 14, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 14, 2020

529376

[*1]In the Matter of Cameron ZZ., Appellant,
v
Ashton B., Respondent.

Calendar Date: March 24, 2020

Before: Garry, P.J., Egan Jr., Lynch, Aarons and Reynolds Fitzgerald, JJ.


Lisa K. Miller, McGraw, for appellant.
Teresa C. Mulliken, Harpersfield, for respondent.
Ciano J. Lama, Ithaca, attorney for the child.



Garry, P.J.
Appeal from an order of the Family Court of Chemung County (Rich Jr., J), entered March 11, 2019, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of one child (born in 2013). In May 2017, Family Court issued an order awarding joint legal custody of the child to the parents and apportioning parenting time equally between them. In July 2018, the father submitted, pro se, a violation petition and a modification petition seeking sole custody of the child and suspension of the mother's parenting time. Both petitions alleged that the mother had impeded the father's parenting time on two occasions. The mother thereafter petitioned for modification of the custody order, alleging that the father did not take adequate care of the child and left the child in the care of others whom she deemed unfit. The father, now represented by counsel, amended his modification petition to add allegations that the mother had had several relationships with boyfriends who were unfit to care for the child.
In February 2019, Family Court conducted a fact-finding hearing on the three petitions. Following the father's case-in-chief — in which the father was the only witness — the mother moved to dismiss the father's petitions, arguing that the father had not proven the violation, and had not shown a change in circumstances as required for modification. The court granted the mother's motion as to the father's violation petition and reserved as to the request to dismiss his modification petition; the court stated an intention to resolve the petition in a manner negative towards the father. The mother then elected not to call any witnesses and moved to withdraw her modification petition. The court reserved and, later that day, issued a written order dismissing the father's violation petition for failure to prove his allegations and dismissing the mother's violation petition without prejudice, among other things. In March 2019, the court issued a decision and order resolving the father's modification petition by finding a change in circumstances, granting sole legal custody to the mother, and decreasing the father's parenting time. The father appeals.
First addressing a procedural issue, the father's notice of appeal is dated April 9, 2019, and states that the appeal is taken from a Family Court order entered on April 9, 2019. Although the notice of appeal bears the same docket number as both the February 2019 order and the March 2019 order, the record contains no order entered on that date. The accompanying CPLR 5531 statement indicates that the appeal is taken "from an order of [Family Court] which dismissed both petitions and yet also modified the prior order." Although the record does not contain information pertaining to service, it appears that an April 2019 appeal from the February 2019 order may be untimely. Nothing in the March 2019 order can reasonably be construed to incorporate or revisit the issues addressed in the February 2019 order. Accordingly, we deem the appeal to be validly taken from the March 2019 order, but not from the February 2019 order. Thus, the father failed to file a valid notice of appeal from the February 2019 order (see Family Ct Act §§ 1112, 1115), and his arguments with regard to Family Court's dismissal of his violation petition are not properly before this Court.
As for the March 2019 order, "[a] parent seeking to modify an existing custody order first must demonstrate that a change in circumstances has occurred since the entry thereof that is sufficient to warrant the court undertaking a best interests analysis in the first instance; assuming this threshold requirement is met, the parent then must show that modification of the underlying order is necessary to ensure the child's continued best interests" (Matter of Tracey L. v Corey M., 151 AD3d 1209, 1210 [2017] [internal quotation marks and citations omitted]; accord Matter of Brandon E. v Kim E., 167 AD3d 1293, 1294 [2018]). Here, the record fully supports Family Court's determination that a change in circumstances had occurred, in that the parties' relationship had deteriorated to such a point that joint custody was no longer feasible (see Matter of Aimee T. v Ryan U., 173 AD3d 1377, 1378 [2019]; Matter of Timothy N. v Gwendolyn N., 92 AD3d 1155, 1156 [2012]). In his testimony, the father described numerous disputes and communication failures between the parties over such matters as the child's medical care, the parenting time schedule and the caretakers selected by the parties. For example, on one occasion, the mother was unable to fill a prescription for the child's medication because the father had changed the child's insurance without notifying the mother of the change. More significantly, the father acknowledged that he had sent numerous text messages to the mother in which, among many other angry, profane and disparaging remarks, he called the mother insulting names, stated that he hoped she would go to jail, warned her that she would lose custody, and said that it was sad that the child had to call her his mother. Upon cross-examination, he stated that his remarks about the mother were accurate, testifying, "I do feel strongly at times that, yes, she is those things that I described."
There was testimony that the mother had also once sent disparaging texts to the father, but that this had occurred on the same day that the father sent certain photographs to her and threatened to publish them on social media. Family Court characterized these photos as "revenge porn." Notably, at the initial appearance in this matter, Family Court had expressed frustration with both parties as a result of their longstanding intense conflict, stating that, between them, the parties had filed more than 20 petitions during the five years of the child's life, many of which were, in the court's view, "frivolous." We agree that the record fully established that the parties were unable to engage in "meaningful communication or cooperation for the sake of the child[]" such that joint custody was not appropriate (Matter of Rosen v Rosen, 162 AD3d 1283, 1284 [2018] [internal quotation marks and citations omitted]; see Matter of Madelyn Z. v Daniel AA., 154 AD3d 1092, 1093 [2017]).[FN1]
"With joint custody no longer feasible, Family Court was then required to determine what custodial arrangement would promote the best interests of the child[]" (Matter of Charles AA. v Annie BB., 157 AD3d 1037, 1039 [2018] [internal quotation marks and citations omitted]). In this analysis, the court was obliged to consider such factors as "the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Aimee T. v Ryan U., 173 AD3d at 1378 [internal quotation marks and citation omitted]; see Matter of Kristen II. v Benjamin JJ., 169 AD3d 1176, 1177 [2019]).
As the father argues, Family Court did not expressly state that it was conducting a best interests analysis, and its discussion of this issue was brief. Nevertheless, it is clear from the order as a whole that the court gave thoughtful consideration to appropriate factors. The court's factual findings supported its conclusions that the mother was making more mature decisions than those made by the father, and that the father continued to be hostile toward the mother, used the legal system as a weapon against her, and took little or no responsibility for his actions. With reference to the father's willingness to promote a relationship between the child and the mother, the court discussed his hostile, disparaging treatment of the mother as reflected in the text messages, as well as incidents that reflected his tendency to make accusations and seek judicial assistance rather than communicating with the mother to resolve problems as they arose. As for the father's failure to take responsibility for his actions, the court noted that, when asked whether his text messages to the mother were appropriate, the father responded, in effect, that his conduct was justified. The court further stated its concern about the father's approach to the child's educational development, finding that the child had frequently been late to school while in the father's care, and that the father appeared unconcerned about this problem. Our independent review of the record supports this finding; the father attempted to minimize the issue of the child's tardiness by claiming that the child was only 10 or 15 minutes late when, in fact, the child had often been as much as one or two hours late. The father explained that he was "not the best at being on time" and that the child was often late because the child was not "in the right mood to go to school."
As for the reduction in the father's parenting time, Family Court stated that it had placed "great weight" on the position of the attorney for the child — who had advocated for a continuation of the shared schedule — and had balanced that position against the child's need for a consistent school schedule.[FN2] The court therefore awarded the father 24 hours of parenting time on every Tuesday and most Saturdays during the school year, with equally shared parenting time, as before, during school breaks and vacations. This schedule placed the child in the mother's care on most school days, while also supporting the attorney for the child's position that the child enjoyed shared parenting time with both parents, as Tuesdays and Saturdays were the father's days off from work. As the father argues, the record reveals that the mother also had various shortcomings as a parent. Nevertheless, we find that the custody award and the parenting time schedule devised by the court are supported by a sound and substantial basis in the record (see Matter of William EE. v Christy FF., 151 AD3d 1196, 1198-1199 [2017]; Matter of Paul T. v Ann-Marie T., 75 AD3d 788, 790-791 [2010], lv denied 15 NY3d 713 [2010]).
Finally, the father contends that various comments made by Family Court during the hearing demonstrate that it was biased or prejudiced against him. This claim is unpreserved for appellate review, as the father failed to object or move for a recusal during the hearing (see Matter of Philip UU. v Amanda UU., 173 AD3d 1382, 1385 [2019]; Matter of Brandon E. v Kim E., 167 AD3d at 1295). If the claim had been preserved, we would have found it to lack merit. Most of the challenged remarks were made at the end of the hearing, in direct response to the father's plainly demonstrated unwillingness to take responsibility for his inappropriate conduct (compare People v Ganoe, 122 AD3d 1003, 1003-1004 [2014], lv denied 25 NY3d 1163 [2015]). Although some of the comments would have been better left unsaid, nothing in the record reveals that any bias on the court's part "unjustly affected the result to the detriment of the [father]" or that the court "[had] a predetermined outcome of the case in mind during the hearing" (Matter of Bowe v Bowe, 124 AD3d 645, 646 [2015] [internal quotation marks and citation omitted]; see Matter of Davis v Pignataro, 97 AD3d 677, 678 [2012]).
Egan Jr., Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: When these parties were previously before this Court disputing an earlier custody order, we affirmed a Family Court determination that awarded sole custody to the mother and found that the parties were unable to communicate or cooperate for the benefit of the child, based upon testimony that the father had threatened and harassed the mother and had acknowledged "that he and the mother ha[d] a 'severe' lack of communication" (Matter of Cameron ZZ. v Ashton B., 148 AD3d 1234, 1235 [2017]).

Footnote 2: The attorney for the child upon appeal supports affirmance of Family Court's order.