Theodore P. v Debra P. (2022 NY Slip Op 05908)

Theodore P. v Debra P.

2022 NY Slip Op 05908

Decided on October 20, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 20, 2022

534067
[*1]Theodore P., Appellant,
v
Debra P., Respondent.

Calendar Date:September 9, 2022

Before:Garry, P.J., Egan Jr., Lynch, Clark and Ceresia, JJ.

Jean M. Mahserjian, Esq., PC, Clifton Park (Katrin E. Falco of counsel), for appellant.
Rhoades, Cunningham & McFadden, PLLC, Latham (John R. McFadden of counsel), for respondent.
Elena Jaffe Tastensen, Saratoga Springs, attorney for the child.

Lynch, J.
Appeal from a judgment of the Supreme Court (James E. Walsh, J.), entered March 11, 2021 in Saratoga County, granting, among other things, primary physical custody of the parties' child to defendant, upon a decision of the court.
Plaintiff (hereinafter the father) and defendant (hereinafter the mother) are the parents of a child (born in 2007). Pursuant to a March 2018 separation agreement — which was to be incorporated but not merged into a subsequent judgment of divorce — the parties agreed to joint legal custody of the child and to share physical custody on a "substantially equal basis in a mutually acceptable manner." The father commenced this divorce action in November 2019 requesting such relief, while the mother joined issue seeking, among other things, a judgment granting her sole legal and physical custody and an order directing the father to attend therapeutic counseling with the child. A trial limited to the issue of custody and parenting time ensued, during which Supreme Court (Jensen, J.) denied the father's motion for a directed verdict (see CPLR 4401). Following a Lincoln hearing, the court found that the child's best interests were served by awarding primary physical custody to the mother and parenting time to the father one evening per week and on alternating weekends. The court further determined that the parties should have modified joint legal custody of the child, endowing the mother with final decision-making authority. Thereafter, Supreme Court (Walsh, J.) incorporated the custody determination into the ensuing judgment of divorce.[FN1] The father appeals.
Turning first to the father's procedural challenges, he argues that Supreme Court (Jensen, J.) abused its discretion in excluding evidence of his relationship with the child before the parties entered the separation agreement. According to the father, such evidence would have revealed that he was the child's primary caregiver for much of her life. Having failed to lodge an appropriate objection at trial, however, this issue is unpreserved for appellate review (see CPLR 4017, 5501 [a] [3]; Matter of Thomas FF. v Jennifer GG., 143 AD3d 1207, 1208 [3d Dept 2016]). Furthermore, even though the father is correct that a court should not unduly restrict proof relevant to the best interests of the child (see id.; Matter of Tarrance v Mial, 22 AD3d 965, 966 [3d Dept 2005]), the mother — in an offensive posture with respect to custody — "relied solely upon recent conduct and/or circumstances as a basis to" challenge the custody provision in the separation agreement (Matter of Wilson v Hendrickson, 88 AD3d 1092, 1093 [3d Dept 2011]). Given the court's broad authority to determine the scope of proof at trial (see id.; Matter of Tarrance v Mial, 22 AD3d at 966; see also Matter of Smith v O'Donnell, 107 AD3d 1311, 1312 [3d Dept 2013]), we cannot say that limiting the evidence to that timeframe was an improvident exercise of discretion.
The father's contention that Supreme Court exhibited [*2]bias against him during the trial is also unpreserved for our review, as he "did not object to [the court's] comments or move for the court's recusal" (Matter of Brandon E. v Kim E., 167 AD3d 1293, 1295 [3d Dept 2018]; see Matter of Philip UU. v Amanda UU., 173 AD3d 1382, 1385 [3d Dept 2019]). In any event, we are unpersuaded by his contention in this respect. Although we agree with the father that the trial judge made some unfortunate remarks at trial and erred in some of her evidentiary rulings, particularly with respect to the issue of hearsay, when considering the entirety of the record we are satisfied that the father was given a sufficient opportunity to present his case and received a fair and impartial trial (see Matter of Cameron ZZ. v Ashton B., 183 AD3d 1076, 1081 [3d Dept 2020], lv denied 35 NY3d 913 [2020]).
As for the father's substantive challenges, he contends, in effect, that Supreme Court erred in proceeding directly to a best interests analysis without first considering whether a change in circumstances occurred since execution of the separation agreement. A party seeking to modify a judicially sanctioned custody arrangement must make a threshold showing of a change in circumstances that warrants an inquiry into whether modification of the arrangement is in the child's best interests (see Matter of Anthony F. v Christy G., 180 AD3d 1197, 1198-1199 [3d Dept 2020]; Matter of Ryan v Nolan, 134 AD3d 1259, 1262 [3d Dept 2015]). Here, however, that standard does not apply, as the parties' separation agreement was never memorialized in a court order or otherwise judicially sanctioned (see e.g. Matter of Liska J. v Benjamin K., 174 AD3d 966, 967 [3d Dept 2019]; Matter of Whetsell v Braden, 154 AD3d 1212, 1213 [3d Dept 2017]; compare Jessica WW. v Misty WW., 192 AD3d 1364, 1366 [3d Dept 2021]; Matter of Coley v Sylva, 95 AD3d 1461, 1461 [3d Dept 2012]). As such, the separation agreement was but a factor to consider in resolving the custody dispute (see Friederwitzer v Friederwitzer, 55 NY2d 89, 94-95 [1982]). In this context, the best interests standard for an initial custody determination applied (see e.g. Matter of Liska J. v Benjamin K., 174 AD3d at 967-968; Matter of Whetsell v Braden, 154 AD3d at 1213; Porcello v Porcello, 80 AD3d 1131, 1132-1133 [3d Dept 2011]). It follows that the court did not err in denying the father's motion for a directed verdict based upon the mother's alleged failure to demonstrate changed circumstances. In any event, we would conclude that such a change in circumstances was demonstrated by the testimony regarding the parties' inability to effectively communicate about the parenting time schedule and the further deterioration of the child's relationship with the father (see Matter of Cameron ZZ. v Ashton B., 183 AD3d at 1078; Matter of Quick v Glass, 151 AD3d 1318, 1319 [3d Dept 2017]).
As to the merits, in making a best interests determination, "a court . . . consider[s] factors such as each parent's past [*3]performance and relative fitness, willingness to foster the [child's] positive relationship with the other parent and ability to maintain a stable home environment and provide for the [child's] well-being" (Antonella GG. v Andrew GG., 169 AD3d 1188, 1189 [3d Dept 2019]; see Herrera v Pena-Herrera, 146 AD3d 1034, 1035 [3d Dept 2017]). "Supreme Court's credibility determinations are accorded great deference, and its findings will not be disturbed so long as they are supported by a sound and substantial basis in the record" (Herrera v Pena-Herrera, 146 AD3d at 1035 [citations omitted]; see Antonella GG. v Andrew GG., 169 AD3d at 1189).
Both parties testified at trial, with a focus on the strained relationship between the father and the child. The mother observed that the child was "more reserved or solemn" before parenting time with the father, "leading [her] to believe that [the child] didn't want to go." After the father's parenting time, the child sometimes seemed to the mother to be "angry" and "frustrated." The mother, concerned for the child and the child's relationship with the father, scheduled therapy sessions with two counselors for the child, which the parties occasionally joined. Both parties attended the first session with the second counselor, who indicated that, going forward, only the party that drove the child to the session needed to attend. The father asked if the child wished him to stay at that session. Although the trial record does not disclose the child's response, the father left the session.
Both parties testified to a November 2019 incident at an ice skating rink at which the child became upset with the father. According to the mother, the father physically blocked the child from leaving the facility, prompting the mother to intervene. The child, increasingly distraught, refused to leave the mother's vehicle despite the father's admonition that his parenting time that day had not expired. According to the mother, the father blamed her for the child's reaction, supporting the conclusion that the parties' relationship was acrimonious, to the child's detriment (see Matter of Rutland v O'Brien, 143 AD3d 1060, 1063 [3d Dept 2016]).
The parties acknowledged that they failed to coordinate custody each week as anticipated by the separation agreement, and they therefore resorted to swapping the child each weeknight and on alternating weekends. At trial, the father explained that, from his perspective, therapy was initiated because the child "experience[d] anxiety regarding [the] transition back and forth between the two homes," undermining his assertion that the arrangement was workable. The record reveals that the inherently unstable arrangement here has taken its toll on the child, which, in our view, militates against its maintenance (see Matter of Cecelia BB. v Frank CC., 200 AD3d 1411, 1413 [3d Dept 2021]).
Correspondingly, the mother testified that she has been more flexible in the custody schedule than the father and [*4]that she would abide by suggestions from a counselor to improve the child's relationship with the father. Supreme Court, having the superior position to observe and evaluate the parties' trial testimony, determined that the mother was more credible than the father, and we defer to that assessment (see Matter of Paul Y. v Patricia Z., 190 AD3d 1038, 1041 [3d Dept 2021]; Matter of Heather NN. v Vinnette OO., 180 AD3d 57, 64 [3d Dept 2019]). On this record, we decline to disturb Supreme Court's award of primary physical custody and decision-making authority to the mother, which is supported by a sound and substantial basis (see Antonella GG. v Andrew GG., 169 AD3d at 1189; Herrera v Pena-Herrera, 146 AD3d at 1035). We note that the attorney for the child urges us to affirm Supreme Court's determination.
Finally, the father maintains that Supreme Court abused its discretion in holding a Lincoln hearing because there was no trial testimony requiring corroboration by the child. We disagree. As the court correctly observed, corroboration of trial testimony and documentary evidence may be "a recognized purpose of a Lincoln hearing," but the "fundamental purpose" of such a hearing "is to ascertain a child's preferences and concerns" (Matter of Christine TT. v Dino UU., 143 AD3d 1065, 1068 [3d Dept 2016]; see Matter of Derek KK. v Jennifer KK., 196 AD3d 765, 768 [3d Dept 2021]). On this record, we conclude that the Lincoln hearing was a provident exercise of the court's discretion (see Matter of Gerber v Gerber, 133 AD3d 1133, 1135 n 6 [3d Dept 2015], lv denied 27 NY3d 902 [2016]).[FN2]
On that note, we once again emphasize that both the court and counsel must respect the child's right to confidentiality during a Lincoln hearing, which is superior to the rights of the parties (see e.g. Matter of Joshua KK. v Jaime LL., 204 AD3d 1345, 1345 n [3d Dept 2022]; Matter of Shirreece AA. v Matthew BB., 195 AD3d 1085, 1091 n 2 [3d Dept 2021]; Matter of Ellen TT. v Parvaz UU., 178 AD3d 1294, 1297 [3d Dept 2019], lv denied 35 NY3d 905 [2020]; Matter of John V. v Sarah W., 143 AD3d 1069, 1071-1072 [3d Dept 2016]; Matter of Gonzalez v Hunter, 137 AD3d 1339, 1343 [3d Dept 2016], lv dismissed and denied 27 NY3d 1061 [2016]; Matter of Julie E. v David E., 124 AD3d 934, 937 [3d Dept 2015]). At the inception of a Lincoln hearing, the court should — as it did here — assure the child that their conversation will be held in strict confidence and not be discussed with the parties. A child, in turn, participates in reliance on that promise. It follows that, in rendering a decision, a court must refrain from revealing, directly or indirectly, the confidential information shared by the child. This includes, for example, commenting on specific trial testimony purportedly corroborated by the child during such a hearing. The same holds true for counsel in writing their briefs.
The father's remaining contentions, to the extent not expressly addressed herein, have been considered and [*5]found lacking in merit.
Garry, P.J., Egan Jr., Clark and Ceresia, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Judge Jensen retired prior to the issuance of the final judgment, and the matter was reassigned to Judge Walsh.

Footnote 2: After the Lincoln hearing concluded, Supreme Court, "concerned about [the child's] mental health if the current custody arrangements continued," immediately issued a temporary order awarding custody and parenting time on the same terms as the appealed judgment. The father posits that the timing of and rationale for the temporary custody order indicate that the child disclosed new information during the Lincoln hearing, and the court erred in not assuring the accuracy of that information by permitting him to respond (see Matter of Lincoln v Lincoln, 24 NY2d 270, 273 [1969]; Matter of Christine TT. v Dino UU., 143 AD3d at 1068). Having completed the trial and the Lincoln hearing, however, the court was sufficiently prepared to issue a custody determination (see S.L. v J.R., 27 NY3d 558, 564 [2016]), and the trial testimony supports the court's concern for the child's emotional well-being. Having reviewed the transcript of the Lincoln hearing, we further note the father's speculative contentions are without merit.