Heber v Heber (2025 NY Slip Op 01984)

Heber v Heber

2025 NY Slip Op 01984

Decided on April 3, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 3, 2025

CV-23-2068
[*1]Felicia A. Heber, Plaintiff,
v
Jacob H. Heber, Appellant.

Calendar Date:February 13, 2025

Before:Egan Jr., J.P., Clark, Lynch, Powers and Mackey, JJ.

Jacob H. Heber, Gansevoort, appellant pro se.

Egan Jr., J.P.
Appeal from a judgment of the Supreme Court (Paul Pelagalli, J.), entered December 29, 2023 in Saratoga County, granting, among other things, plaintiff a divorce, upon a decision of the court.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 2015 and are the parents of three children (born in 2014, 2016 and 2018). The wife commenced this action for divorce in February 2021. Following joinder of issue, several pending custody and family offense proceedings were transferred from Family Court to Supreme Court and consolidated with the divorce action. An order was then issued in December 2021 which directed the husband to pay $1,523.20 a month in child support to the mother during the pendency of the action, and the husband's subsequent efforts to modify that temporary award were rejected.
As trial began in July 2022, counsel for the husband was relieved upon her motion. New counsel was appointed before the next appearance and, in March 2023, the parties reached an agreement on the issue of custody. An order was entered in April 2023 that implemented the terms of that agreement and awarded the parties joint legal custody of the children, with the wife having final decision-making authority in the event of a disagreement between the parties on issues involving the children. The order further awarded the wife primary physical placement of the children, with the husband to enjoy significant specified parenting time and any additional time as the parties could agree.
The trial then continued on for several more appearances. The husband failed to appear altogether for a September 2023 trial date on financial issues because he was purportedly at a hospital emergency room seeking treatment following a fainting spell. Supreme Court directed counsel for the husband to produce the discharge summary from the hospital and warned that it would deem the husband to have rested on his financial statement if he could not demonstrate a good excuse for his absence. No documentation was provided and, two days later, Supreme Court notified the parties by letter that it deemed the husband to have rested on all financial issues. The husband's subsequent attempts to revisit the issue were rejected by Supreme Court, and the trial concluded in October 2023.
Supreme Court thereafter issued a December 2023 decision in which it, among other things, resolved issues of equitable distribution, determined that the April 2023 custody order should be incorporated into the divorce judgment and directed the husband to pay the wife child support in the amount of $1,523.20 per month as well as arrears owed under the temporary support order. A judgment of divorce was entered later that month to implement the terms of the decision. The husband appeals.[FN1]
The husband questions the award of child support. In that regard, Supreme Court found that the wife earned approximately $80,000 per year. The court also found that the husband earned approximately [*2]$35,000 per year working for his parents at the Airway Meadows Golf Club, but imputed an income of $68,250 to him because he was fired for cause from a job where he earned that amount in July 2022. Supreme Court noted that the husband was the noncustodial parent under the terms of the April 2023 custody order and, after applying the formula set forth in the Child Support Standards Act (see Domestic Relations Law § 240 [1-b]), determined that his child support obligation was $1,523.20 per month and directed him to pay that amount to the wife.
The husband does not dispute Supreme Court's imputation of income or its calculation of his support obligation; rather, he argues that the court erred in directing him to pay any child support because he and the wife have essentially equal parenting time and she makes more money than him. There is no doubt that "the custodial parent for purposes of child support is the parent who has physical custody of a child for the majority of the time" and, if the parents share parenting time equally, the one "with greater income is deemed to be the noncustodial parent for purposes of calculating child support" (Matter of Mitchell v Mitchell, 134 AD3d 1213, 1214 [3d Dept 2015]; see Matter of Treglia v Varano, 222 AD3d 1299, 1300 [3d Dept 2023]; Hughes v Hughes, 200 AD3d 1404, 1407-1408 [3d Dept 2021]). Here, however, although the husband enjoyed significant parenting time under the terms of the April 2023 order, the wife was awarded more and had "primary physical custody." Although the testimony at trial indicated that the parties had varied somewhat from the schedule set forth in that order, the proof did not reflect that they had varied so much that they had begun sharing parenting time on an equal basis. The record therefore supports the determination of Supreme Court that the wife is the primary physical custodian of the parties' children and, as "the noncustodial parent's child support obligation [is not] reduced based upon the amount of time he or she actually spends with the children," Supreme Court properly calculated the husband's support obligation under the Child Support Standards Act and directed him to pay that amount to her (Matter of Jennifer VV. v Lawrence WW., 183 AD3d 1202, 1206 [3d Dept 2020]; see Bast v Rostoff, 91 NY2d 723, 730 [1998]).
The husband's remaining arguments largely revolve around the manner in which the trial was conducted, and we address them in turn. He argues that Supreme Court exhibited bias toward him at various points throughout this matter, but he never moved for recusal or offered any objection to an actual ruling on that ground, instead occasionally stating his belief, which Supreme Court made clear was unfounded, that the court had prejudged the case against him.[FN2] It is questionable whether such vague assertions by the husband preserved his claim of bias (see e.g. Theodore P. v Debra P., 209 AD3d 1146, 1147 [3d Dept 2022]). Assuming, without deciding, that they did, "the fact [*3]that a judge issues a ruling that is not to a party's liking does not demonstrate either bias or misconduct," particularly where, as the trial judge explained to the husband here, his actions were based upon information obtained in the performance of the court's adjudicatory functions as opposed to any bias (Gonzalez v L'Oreal USA, Inc., 92 AD3d 1158, 1160 [3d Dept 2012], lv dismissed 19 NY3d 874 [2012]; see Kopko v Kopko, 229 AD3d 974, 976 [3d Dept 2024], appeal dismissed 42 NY3d 1086 [2025]; Mokay v Mokay, 124 AD3d 1097, 1099 [3d Dept 2015]). Our review of the record gives no reason to believe that Supreme Court had a predetermined outcome in mind or that any of its decisions were affected by impermissible bias so as to warrant reversal (see Matter of Cameron ZZ. v Ashton B., 183 AD3d 1076, 1081 [3d Dept 2020], lv denied 35 NY3d 913 [2020]).
The husband's remaining contentions are largely unavailing. He complains that he was deprived of his right to counsel when Supreme Court granted the request of his then-attorney — who was, we note, his fourth in this matter — to withdraw at the outset of the July 2022 trial date and allowed counsel for the wife to examine the wife on the issue of custody that day. The husband was represented by counsel at the next trial date when the wife was cross-examined, however, as well as when the parties reached the agreement resolving the custody issue that was embodied in the April 2023 order. Under those circumstances, the failure to adjourn the July 2022 trial date did not deprive him of his statutory right to counsel in custody matters (see Family Ct Act § 262 [a]; Matter of Shea v Hoskins, 12 AD3d 1191, 1192 [4th Dept 2004]; Matter of Fralix v Thornock, 9 AD3d 890, 890 [4th Dept 2004]; compare Matter of Keenan v Keenan, 51 AD3d 1075, 1077 [3d Dept 2008]). Finally, his assertion that counsel for the wife perpetrated a fraud upon the court in an effort to demean him was not raised before Supreme Court and is unpreserved for our review (see CPLR 5501 [a] [3]; Matter of Mills v New York State Bd. of Elections, 207 AD3d 943, 946 [3d Dept 2022]).
We do agree with the husband that the issue of equitable distribution must be reconsidered. In that regard, the husband failed to appear for a September 25, 2023 trial date where the parties were expected to present proof on financial issues. When counsel for the husband represented that he was at a hospital emergency room seeking medical treatment, Supreme Court made clear that it was "going to cause [the husband] to rest on the financials" unless he provided a discharge summary of his hospital visit and demonstrated a good excuse for his absence. The court did not provide a deadline for submitting such proof. The husband did not immediately provide the documentation and, on September 27, 2023, Supreme Court issued a letter in which it noted that fact and determined that he had rested his case on financial issues as a result. On September 28, 2023, counsel for the husband [*4]asked the court to reconsider and provided paperwork from the hospital showing that the husband had, in fact, been in the emergency room on September 25 to get checked out after he had purportedly fainted and fell that morning. Under these circumstances, Supreme Court should have revisited its initial determination and allowed the husband to present his financial proof at the next trial date (compare Osman v Osman, 83 AD3d 1022, 1023 [2d Dept 2011], with Simak v Simak, 121 AD3d 1090, 1090 [2d Dept 2014]). As "the facts were not sufficiently developed at trial to enable a reasoned determination of the issue of equitable distribution" as a result, we are constrained to remit for a hearing and new determination on that subject (Madu v Madu, 135 AD3d 836, 837 [2d Dept 2016]; see George JJ. v Shannon JJ., 212 AD3d 1020, 1021 [3d Dept 2023]; Kaufman v Kaufman, 189 AD3d 31, 52 [2d Dept 2020]).
The husband's remaining contentions, to the extent that they are not rendered academic by the foregoing and are properly before us, have been considered and found to lack merit.
Clark, Lynch, Powers and Mackey, JJ., concur.
ORDERED that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as awarded equitable distribution; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: The notice of appeal in the record indicates that the husband appealed from the decision rather than the judgment of divorce, but we exercise our discretion to treat the appeal as properly taken from the judgment (see CPLR 5520 [c]; Arthur v Arthur, 148 AD3d 1254, 1254 n 1 [3d Dept 2017]).

Footnote 2: After the judgment of divorce was issued, the husband moved, apparently unsuccessfully, to renew and/or reargue the findings underlying the judgment of divorce upon the ground of bias. The only appeal before us is the one from the judgment. As such, "to the extent that the record on appeal incorporates papers from [the subsequent] motion to reargue, we have not considered same as they are not properly before us" (Randolph v Warnecke, 1 AD3d 731, 732 [3d Dept 2003]; accord Boushie v Latt, 203 AD3d 1363, 1364 n [3d Dept 2022]).