■ In the Matter of JOSEPH S. KACZYNSKI, Appellant, v DARLENE VAN AMERONGEN, Now Known as DARLENE GUZEWSKI, Respondent. [725 NYS2d 755] —Peters, J. Appeal from an order of the Family Court of Schenectady County (Griset, J.), entered June 18, 1999, which dismissed petitioner's application, in a proceeding pursuant to Family Court Act article 6, for modification of a prior order of custody.

The parties are the biological parents of Carly who was born in 1993 during the course of a six-year relationship which was to be consummated in marriage until respondent learned, 36 hours prior to the wedding, that petitioner had not yet separated, let alone divorced, his wife of now 29 years. At all times, Carly resided with respondent. After respondent sued to establish paternity, the parties entered into a stipulation, ultimately incorporated into a June 1997 order of Family Court, whereby they would have joint custody of the child with primary physical custody to respondent subject to petitioner's rights to visitation. These visitation rights gradually increased

---

from alternate Sundays with one evening per week to alternate weekend overnight visitation, in addition to the midweek visitation, so long as petitioner regularly exercised the more restrictive visitation schedule. In January 1998, petitioner commenced this proceeding seeking primary physical custody by alleging that respondent refused him visitation, engaged in parental alienation and created an unsafe home environment. Following a three-day hearing, Family Court dismissed the petition. This appeal ensued.

Although the " '[a]lteration of an established custody arrangement will be ordered only upon a showing of sufficient change in circumstances reflecting a real need for change in order to insure the continued best interest of the child' " (*Matter of Moreau v Sirles*, 268 AD2d 811, 812, *lv denied* 95 NY2d 752, quoting *Matter of Van Hoesen v Van Hoesen*, 186 AD2d 903), when the custody arrangement emanates as a result of a stipulation between the parties, "that award 'is entitled to less weight than [when] a disposition [is made] after a plenary trial' " (*Matter of Holden v Tillotson*, 277 AD2d 735, quoting *Matter of Carl J. B. v Dorothy T.*, 186 AD2d 736, 737). Thus, a court is duty bound to consider the totality of the circumstances in assessing whether custody should be changed (*see, Eschbach v Eschbach*, 56 NY2d 167, 171), with the best interest of the child remaining paramount (*see, Friederwitzer v Friederwitzer*, 55 NY2d 89). Factors to be considered in making this determination include, *inter alia*, the quality of the home environment and the ability of the custodial parent to provide parental guidance and promote the child's intellectual and emotional development (*see, Eschbach v Eschbach, supra*, at 172; *Matter of Holden v Tillotson, supra*, at 735; *Matter of Farnham v Farnham*, 252 AD2d 675, 676).

Upon our review, we find sufficient evidence supporting Family Court's determination. Allegations of parental alienation and a refusal of access for visitation were properly rejected as unsupported by both the documentary and testimonial evidence. While petitioner admitted that he occasionally failed to exercise his scheduled visitation, respondent recounted that he exercised overnight visitation on only one or two occasions since March 1998 and then essentially stopped seeing the child for a period of time until the instant proceeding was initiated. During this same period, respondent estimated that petitioner missed as many as 30 days of visitation, mostly due to excuses centering on his own convenience; he never spent a holiday with the child and when he specifically asked to see her on Labor Day 1998, he canceled the visitation after all arrangements were made.

As to petitioner's allegations that the child's home environment was unsafe,* the record reflects that although there were numerous police reports, none of these incidents involved the child in any manner or reflected acts of violence. Instead, the testimony, confirmed by documentary evidence, revealed that the incidents pertained to the domestic problems of respondent and her current husband, for which they have since commenced counseling, or concerned respondent's 16-year-old daughter and, at times, respondent's husband's son.

In further support of sole custody, petitioner highlighted an event which occurred after the filing of the petition whereby respondent became disoriented and, upon being found by the police in her car along a highway with the child, was taken to the psychiatric unit of Ellis Hospital where she remained from February 5 to 11, 1998. Respondent openly testified about the incident which was triggered by bipolar disorder, explaining that she had been diagnosed with this condition in 1985. Having had no episodes for over 10 years, she had ceased taking her medication but, as of the hearing, was compliant with her drug treatment plan, seeing a psychiatrist once a month and a counselor every two weeks. Her psychiatrist confirmed that upon her discharge, she was able to take care of herself and her family and was no longer a danger so long as she was compliant with her treatment plan. Admitting that she missed a few appointments with both her counselor and psychiatrist because of work or other obligations, respondent testified, as confirmed by the testimony of the medical providers, that she always called to reschedule.

In our view, the testimony and documentary evidence reveal that although petitioner's home presented a more stable environment, an issue remained concerning the psychological capability of petitioner's wife to accept this child into her home. As the psychologist who evaluated the parties and their spouses opined, petitioner's wife was emotionally unprepared for the arrival of Carly into her home life. Although a subsequent evaluation by that same psychologist concluded that progress had been made, he remained concerned. Critical to us, however, was the fact that although petitioner's wife was scheduled to appear before Family Court and testify in support of the application, she failed to appear without excuse. For this reason, we believe that the court ultimately balanced its concern about respondent's shortcomings, which included a

---

* Petitioner also filed criminal charges against respondent's husband, ultimately dismissed in January 1998, and initiated three Child Protective Services reports against her which were resolved as unfounded.

veiled attempt to explain the child's illegal school absences, with the serious emotional effects that the child would suffer were she placed with petitioner and his wife. As "Family Court's determination is entitled to great deference * * * as it had the advantage of hearing the witnesses and weighing their credibility and will only be set aside if it lacks a sound and substantial basis in the record" (*Matter of Nicotera v Nicotera*, 222 AD2d 892, 893), we find no basis upon which we would disturb the determination rendered.

Turning to Family Court's failure to have allowed the Law Guardian to make a recommendation prior to the rendering of its decision, we note that the Law Guardian was provided with an opportunity to fully participate in every other aspect of the proceeding. While such recommendation is, no doubt, a valuable contribution to the decision-making process, it is not binding on the court (*see, Matter of White v White*, 267 AD2d 888) and, thus, its omission does not require our reversal (*see, Matter of Gray v Jones*, 251 AD2d 765, 767; *Matter of Hall v Keats*, 184 AD2d 825, 827).

Crew III, J. P., Spain, Mugglin and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.