Matter of David JJ. v Tara KK. (2025 NY Slip Op 04063)

Matter of David JJ. v Tara KK.

2025 NY Slip Op 04063

Decided on July 3, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 3, 2025

CV-24-0405
[*1]In the Matter of David JJ., Respondent,
v
Tara KK., Appellant.

Calendar Date:June 2, 2025

Before:Garry, P.J., Egan Jr., Fisher, Powers and Mackey, JJ.

Lisa K. Miller, McGraw, for appellant.
Sandra M. Colatosti, Albany, for respondent.
Larisa Obolensky, Bovina Center, attorney for the child.

Fisher, J.
Appeal from an order of the Family Court of Broome County (Brett Noonan, J.), entered February 14, 2024, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a son (born in 2011). Pursuant to a July 2018 order entered upon consent, the mother had sole legal custody of the child, with primary physical custody to the mother and parenting time to the father as agreed to by the parties. In April 2023, after the child reported to the father and a staff member at his school that he was involved in a physical altercation with his mother, the father filed a petition to modify the 2018 order seeking sole legal custody and primary physical custody of the child. Family Court issued two temporary orders to that extent, and further granted the mother supervised visitation as agreed to by the parties. Following a fact-finding hearing and a Lincoln hearing, Family Court modified the 2018 order by awarding joint legal custody with primary physical custody to the father. The court further granted the mother therapeutic parenting time with the child and directed that such parenting time commence without unreasonable delay, as well as any additional parenting time as agreed to by the parties. The mother appeals.
Initially, we agree with the mother that Family Court erred in allowing the caseworker to testify regarding what was depicted in the video recordings that were not introduced into evidence because it violated the best evidence rule in that the "contents [were] in dispute and sought to be proven" and the unavailability of the recordings was not explained (Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639, 643-644 [1994]). However, such error was harmless given that Family Court placed little reliance on this evidence, certain allegations occurring in the videos were corroborated by other admissible sources, and there was other evidence in the record which was sufficient to support the court's determinations — notably certain admissions during the mother's testimony (see Matter of Traci A. v Maxmillion B., 232 AD3d 1070, 1073 [3d Dept 2024]; Matter of Brandon HH. v Megan GG., 214 AD3d 1036, 1037 [3d Dept 2023]). For similar reasons, we reject the mother's contention that Family Court also allowed inadmissible hearsay of what the child allegedly told the caseworker, as such statements were either sufficiently corroborated or other evidence was sufficient to support the court's determinations (see Matter of Cassidy S. v Bryan T., 180 AD3d 1171, 1173-1174 [3d Dept 2020]; Matter of Cory O. v Katie P., 162 AD3d 1136, 1136-1137 [3d Dept 2018]).
Turning to the merits, where, as here, a parent seeks to modify an existing custody order, such parent "must first show that a change in circumstances has occurred since the entry of the existing custody order that then warrants an inquiry into what [*2]custodial arrangement is in the best interests of the child" (Matter of Tara DD. v Seth CC., 214 AD3d 1031, 1032-1033 [3d Dept 2023] [internal quotation marks and citations omitted]). A parent may establish a change in circumstances by demonstrating "new developments or changes that have occurred since the previous custody order was entered" (Matter of John EE. v Jalyssa GG., 222 AD3d 1219, 1221 [3d Dept 2023] [internal quotation marks and citations omitted]), including a deterioration of the child's relationship with a parent (see Matter of C.M. v Z.N.,230 AD3d 1409, 1411 [3d Dept 2024]; Matter of Theodore P. v Debra P., 209 AD3d 1146, 1148 [3d Dept 2022]; see generally Matter of John V. v Sarah W., 143 AD3d 1069, 1070 [3d Dept 2016]). The mother acknowledged that her relationship with the child had been "deteriorating quickly" leading up to the incident in April 2023, when, although the exact details appear to be disputed, the mother's testimony confirmed that a physical altercation occurred between her and the child. Both the mother and the father testified that the child did not want to see the mother after the incident or return to her residence. The further testimony of the mother and the maternal grandmother revealed that the child subsequently refused to interact with the mother during her parenting time or otherwise communicate via phone calls or text messages. As Family Court properly concluded, there has been a breakdown in the relationship between the mother and the child which constituted a change in circumstances that warranted revisiting the parties' custodial arrangement (see Matter of C.M. v Z.N.,230 AD3d at 1411; Matter of Lora PP. v Alphonso PP., 221 AD3d 1321, 1322 [3d Dept 2023]; see also Matter of Sarah I. v Ian J., 233 AD3d 1334, 1335 [3d Dept 2024], lv denied 43 NY3d 904 [2025]).
Next, we shift our focus to whether Family Court's custody and parenting time determinations serve the best interests of the child, which involves consideration of, among other factors, "each parent's relative fitness and past parenting performance, the duration of the prior custody arrangement, the child's wishes, the respective home environments, including the existence of domestic violence, and the likelihood of each parent to foster a relationship between the child and the other parent" (Matter of Matthew DD. v Amanda EE., 187 AD3d 1382, 1383 [3d Dept 2020] [internal quotation marks and citations omitted]). In doing so, we recognize that, "although not determinative, the expressed wishes of the child are some indication of what is in his or her best interests, considering his or her age, maturity and potential to be influenced" (Matter of Chad KK. v Jennifer LL., 219 AD3d 1581, 1584 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]). To this point, even though "parenting time with a noncustodial parent is generally presumed to be in a child's best interests, a structured parenting time schedule is not required where it [*3]would be detrimental to the child's welfare" (Matter of Lora PP. v Alphonso PP., 221 AD3d at 1323). "Given Family Court's superior position to evaluate the testimony and credibility of witnesses, we accord great deference to its factual findings and credibility assessments and will not disturb its determination if supported by a sound and substantial basis in the record" (Matter of Michelle L. v Steven M., 227 AD3d 1159, 1161 [3d Dept 2024] [internal quotation marks and citations omitted]).
The hearing testimony revealed that the parties divorced around the time the child was born, and the mother maintained sole legal and physical custody of the child while the father had limited contact with him — including periods of no financial support or contact that extended several years. According to the mother, in December 2021, she contacted the father because he had not seen the child for several years.[FN1] Thereafter, the parties testified that the father resumed parenting time with the child, which ultimately graduated to an alternating weekly schedule. During this time, the father and the principal of the child's elementary school testified that there was an improvement in the child's behavior and performance at school — a point the mother also acknowledged observing at home. The father began to take the child to visit members of his family, including out of state. According to the father, although the mother agreed to the travel plans, the mother had a "problem" with the visits and the father later overheard a phone call where the mother was giving the child a "guilt trip" about going with the father to visit his extended family.[FN2] Thereafter, the father overhead the mother on another phone call being "very angry" and yelling at the child, including calling the child offensive and derogatory names. Leading up to the incident in April 2023, the father testified that the child approached him with a series of cellphone videos of the mother berating the child and — in one video — cursing at the child and then grabbing his leg while she was driving a vehicle.[FN3]
Although the exact details of the April 2023 incident are unclear and disputed, the mother testified that the child had kicked her in the mouth and then retreated to a relative's adjoining residence, where the child refused to go back with the mother and demanded that the father come pick him up. The mother then "physically scooped him up off the couch, like a baby," and attempted to carry the child back to her residence but "[h]e was squirming all over the place, and he fell to the ground." Shortly thereafter, the mother testified she was notified of a hotline report against her which was subsequently indicated for inadequate guardianship. Following the issuance of temporary orders, the parties testified that the child became closer to his father and began to engage in sports that the father had an interest in or participated in — and not the sports that the mother had previously enjoyed with the child[*4], including sports that the child was extremely talented in playing. The maternal grandmother testified that, during this time and despite always having a "[c]lose and deeply bonded" relationship with the child, her relationship with the child completely ended. Other witnesses presented on behalf of the mother offered similar testimony of their close relationship with the child and their observations of the mother's interactions with the child, which each witnessed deemed appropriate or loving. Notably, each witness also offered varying degrees of testimony as to the father's limited role in the child's life or interactions with them or the mother.
Upon review, we are satisfied that Family Court properly exercised its discretion in awarding joint legal custody and primary physical custody to the father. Family Court, in a thorough and well-reasoned decision, acknowledged the hostility between the mother and the father, as well as their respective families. Despite this clear hostility between the parties, the testimonial evidence demonstrated that they were still able to communicate in order to complete weekly exchanges or arrange parenting time between the mother, the grandmother and the child. Further, although the child had bonded quickly with the father who took initiative with his education and other needs, Family Court appropriately recognized that the mother had a better understanding of the child's present needs as she had been exclusively responsible for his medical care and the sole participant in meetings for the child's 504 plan before December 2021, whereas the father had been absent from the child's life for approximately three years before such time. Family Court reasoned this may have been due to the mother's conduct which had "actively impeded on the child's relationship with his father," but was also concerned that the father would engage in similar conduct against the mother in the future. Since joint legal custody "is an aspirational goal in every custody manner" and the parties have demonstrated that they are "able to communicate with one another in a cooperative fashion," we conclude that a sound and substantial basis in the record supports Family Court's determination that it was in the child's best interests to award the parties joint legal custody (Matter of Christine E. v Clifford F., 200 AD3d 1111, 1112-1113 [3d Dept 2021] [internal quotation marks and citations omitted]).
As for primary physical custody to the father, it was undisputed from the testimony of the mother and the father that the child refused to return to the mother's residence or otherwise interact with her; this point is echoed by the appellate attorney for the child. The mother further made several admissions during her testimony that greatly concern us, including to certain comments that she had made to the child about the father and the father's family, notably that the father had allegedly raped her and that she wished that she would die so that the [*5]child would regret it every day of his life. As highlighted by the appellate attorney for the child, these comments and the behavior by the mother indicate she is not fit to act as a custodial parent. Such actions by the mother had a negative impact on the child, as the father testified that, following one phone conversation between the child and the mother, the child came into the father's room crying that the mother was calling him certain derogatory names. Accordingly, deferring to the credibility determinations and factual findings by Family Court, we are also satisfied that a sound and substantial basis in the record exists for the conclusion that it is in the best interests of the child for him to primarily reside with the father (see Matter of James EE. v Vanessa EE., 228 AD3d 1025, 1027-1028 [3d Dept 2024]; Matter of Michelle L. v Steven M., 227 AD3d at 1163).
Next, the mother contends that the legal and physical custody determinations are premised on flawed reasoning because Family Court erred in failing to recognize that the father engaged in parental alienation against the mother. We disagree. Parental alienation occurs when there is willful interference by one parent with the parental access rights of the other party, which is "so inconsistent with the best interests of the child as to, per se, raise a strong probability that the offending party is unfit to act as custodial parent" (Matter of Jahari BB. v Zada CC., 232 AD3d 1142, 1146 [3d Dept 2024] [internal quotation marks, brackets and citation omitted]; see Matter of Luke v Erskine, 222 AD3d 868, 871 [2d Dept 2023]). Our review of the record reveals a single, unsupported allegation by the mother that the father told her that he would make the child hate her. Although the mother points to certain inconsistencies in the child's behavior, she offers no evidence of parental alienation other than speculation. Family Court heard no testimony from a medical or expert witness regarding parental alienation, but did hear testimony from the mother admitting to engaging in certain conduct that could impede the relationship between the father and the child — including conduct or statements made to the child that concern us. Therefore, we find the mother's allegations of parental alienation to be unsupported by documentary and testimonial evidence, and discern no basis to disturb the determination of Family Court (see Matter of Jahari BB. v Zada CC., 232 AD3d at 1146; Matter of Kaczynski v Van Amerongen, 284 AD2d 600, 601 [3d Dept 2001]; compare Matter of Dobies v Brefka, 83 AD3d 1148, 1151 [3d Dept 2011]).
Lastly, to the extent that the mother challenges the portion of Family Court's order requiring therapeutic parenting time between her and the child,[FN4] we find such contention to be without merit. Our review of the record reveals that the prospect of any visitation or custodial time with the mother caused the child distress, but that the father had enrolled the child in counseling and further [*6]supported therapeutic parenting time with the mother (see Lora PP. v Alphonso PP., 221 AD3d at 1324). Family Court recognized that the child's best interests lie in a healthy relationship with both parents, and appropriately considered that therapeutic parenting time would allow the mother and the child to possibly rebuild their relationship (see Matter of Sarah I. v Ian J., 233 AD3d at 1338). In further considering the balance of the testimony from the fact-finding hearing and the Lincoln hearing, we perceive no error with this determination. We have considered the remaining contentions of the parties and have found them to be without merit or rendered academic.
Garry, P.J., Egan Jr., Powers and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: At the time that the mother contacted him, the father admitted that he had not seen the child for a period of two to three years.
Footnote 2: The father testified that the child's phone was on speakerphone, thereby allowing it to be audible in another room.
Footnote 3: The mother testified that she recalled an incident where she reached back and grabbed the leg of the child while she was driving, but did not comment further on the other allegations related to that incident.

Footnote 4: Although the mother's appeal did not specifically challenge Family Court's determination of therapeutic parenting time between her and the child, we observe that she sought to reverse and vacate the entire order on appeal, and to restore the arrangements set forth by the 2018 order.